DAVID M. JOLLEY (SBN 191164)
Email:  djolley@donahue.com
DONAHUE FITZGERALD LLP
1999 Harrison Street, 26th Floor
Oakland, California 94612-3520
Telephone: (510) 451-3300
Facsimile:  (510) 451-1527

Attorneys for Defendant
TOOTSIE ROLL INDUSTRIES, LLC

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MAISEL, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>                     v.<br><br>TOOTSIE ROLL INDUSTRIES, LLC, and DOES 1 through 10, inclusive,<br><br>              Defendants. | Civil Case No.: 3:20-cv-05204-SK<br><br>**DEFENDANT TOOTSIE ROLL INDUSTRIES, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>Judge:      Hon. Sallie Kim<br>Courtroom:  C<br>Date:       November 30, 2020<br>Time:       9:30 a.m.<br><br>Complaint filed:  May 29, 2020 |

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................... 1

II.     STATEMENT OF FACTS / PROCEDURAL HISTORY ...................................... 2

III.    ARGUMENT ........................................................................................................... 3

        A.      Standard for Removal Under CAFA ........................................................... 3

        B.      Plaintiff Has Placed More Than $5 Million in Controversy ....................... 5

                1.      Complete Restitution Theory ........................................................... 5

                2.      Partial Restitution Theory ................................................................ 7

        C.      Plaintiff's Unsupported Allegations of "Price Premia" Cannot Be Used to Reduce
                the Maximum Amount Placed at Issue by the Allegations in Her Complaint .................. 8

        D.      An Award of Attorneys' Fees Is Not Justified Against Tootsie Roll ............... 9

IV.     CONCLUSION ........................................................................................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arias v. Residence Inn by Marriott,*
   936 F.3d 920 (9th Cir. 2019) ........................................................................4, 5, 6

*Daniel v. Tootsie Roll Industries, LLC,*
   2018 WL 3650015 (S.D.N.Y. Aug. 1, 2018) .................................................1

*Dart Cherokee Basin Operating Co. v. Owens,*
   574 U.S. 81 (2014)..........................................................................................3, 4

*Feao v. UFP Riverside, LLC,*
   2017 WL 2836207 (C.D. Cal. June 29, 2017) ...............................................6

*Fritsch v. Swift Transp. Co. of Ariz., LLC,*
   899 F.3d 785 (9th Cir. 2018) ..........................................................................5

*Gordon v. Tootsie Roll Industries, Inc.,*
   2018 WL 6133638 (C.D. Cal. Sept. 6, 2018) ................................................2

*Gordon v. Tootsie Roll Industries, Inc.,*
   810 Fed. App'x 495 (9th Cir. 2020) .........................................................1, 2, 3

*Ibarra v. Manheim Invest., Inc.,*
   775 F.3d 1193 (9th Cir. 2015) ........................................................................3, 4

*Korn v. Polo Ralph Lauren Corp.,*
   536 F. Supp. 1199 (E.D. Cal. 2008)...............................................................6

*Lowdermilk v. U.S. Bank Nat'l Assn.,*
   479 F.3d 994 (9th Cir. 2007) ..........................................................................4

*Madrid v. Perot Sys. Corp.,*
   130 Cal. App. 4th 440 (2005) .........................................................................5

*Martin v. Franklin Capital Corp.,*
   546 U.S. 132 (2005)........................................................................................9

*Rodriguez v. AT&T Mobility Servs. LLC,*
   728 F.3d 975 (9th Cir. 2013) ..........................................................................4, 8

*Schneider v. Ford Motor Co.,*
   756 Fed. App'x 699 (9th Cir. 2018) ...............................................................4

*Standard Fire Insurance Company v. Knowles*,
   568 U.S. 588 (2013)........................................................................................................8

*Stemm v. Tootsie Roll Industries, Inc.*,
   374 F. Supp. 3d 734 (N.D. Ill 2019) ..........................................................................1

**Statutes**

28 U.S.C. § 1332(d) ...........................................................................................................3

28 U.S.C. § 1447(c) ...........................................................................................................9

TOOTSIE ROLL'S OPPOSITION TO MOTION TO REMAND          Case No. 3:20-cv-05204-SK

## I.     INTRODUCTION

Plaintiff Elizabeth Maisel ("Plaintiff") has filed this putative class action against Defendant Tootsie Roll Industries, L.L.C. ("Tootsie Roll") for unjust enrichment, fraud, breach of the implied warranty of merchantability, and violations of California's consumer protection laws.  In her Complaint, Plaintiff alleges that boxes of Tootsie Roll's candy "Products" – specifically Junior Mints in 3.5 oz. boxes and Sugar Babies in 6.0 oz. boxes – are up to half empty when sold (*i.e.*, the boxes contain up to 50% impermissible "slack fill").  Specifically, Plaintiff alleges more than a dozen times in her Complaint that the candy boxes at issue were 45% empty.

Tootsie Roll timely removed this case from Alameda County Superior Court to this United States District Court pursuant to the Class Action Fairness Act ("CAFA"), and now Plaintiff moves to remand back to state court.  The only disputed issue is whether she has placed at least $5 million in controversy, such that the "amount-in-controversy" jurisdictional requirement of CAFA has been met.  As shown below, it is clear that Plaintiff has placed at least $5 million in controversy, and her Motion to Remand should be denied.

To be clear, Tootsie Roll does not believe that Plaintiff or the putative class should recover *any* amount as a result of her legally deficient claims.  Tootsie Roll already has litigated *three* previous cases in federal court alleging nearly identical slack-fill claims, all of which have failed:

- In *Daniel v. Tootsie Roll Industries, LLC*, 2018 WL 3650015, at *13 (S.D.N.Y. Aug. 1, 2018), Judge Naomi Reice Buchwald – citing the clear labeling on its candy boxes – dismissed the slack-fill claims against Tootsie Roll, holding that "[t]he law simply does not provide the level of coddling plaintiffs seek."

- In *Stemm v. Tootsie Roll Industries, Inc.*, 374 F. Supp. 3d 734, 743 (N.D. Ill 2019), Judge John Z. Lee dismissed similar slack-fill claims against Tootsie Roll for failure to state a claim, holding that allegations that a plaintiff expected to "receive something more than what she got, in and of itself, does not constitute actual damages."

- Finally, *Gordon v. Tootsie Roll Industries, Inc.*, was a nearly identical action litigated in the Central District of California by the very same plaintiffs' firm – the Clarkson Law Firm, P.C. – that is prosecuting the current case.  After a year and a half of costly and

burdensome litigation in *Gordon*, the Clarkson Law Firm simply abandoned its case, which ultimately led to Judge Dale S. Fischer dismissing the action and entering judgment for Tootsie Roll.  *See Gordon v. Tootsie Roll Industries, Inc.*, 810 Fed. App'x 495, 497 (9th Cir. 2020).[1]

Accordingly, because (as shown below) the amount in controversy placed at issue by Plaintiff exceeds $5 million, Tootsie Roll's removal of this action to federal court satisfies the requirements of CADA, and Plaintiff's Motion to Remand should be denied.

## II.    STATEMENT OF FACTS / PROCEDURAL HISTORY

Plaintiff is a California consumer of candy products.  Complaint ¶ 9.  Tootsie Roll is a candy manufacturer based in Chicago, Illinois.  *Id.* ¶ 10.

Plaintiff alleges that, from May 29, 2016, to May 2, 2018, Tootsie Roll sold certain boxed candy products (namely 3.5 oz. boxes of Junior Mints and 6.0 oz. boxes of Sugar Babies) to consumers in California that contained impermissible levels of slack fill (*i.e.*, empty space) without adequate disclosure language on the package itself, all in supposed violation of California's consumer protection laws.  *Id.* ¶ 85.  Throughout her Complaint, Plaintiff alleges more than one dozen times that the candy boxes at issue are 45% empty.  *See id.* ¶¶ 43, 48, 75, 109-114, 119, 129 136, 146, 150, 153, 163, 164, 184.  Plaintiff acknowledges that labeling changes made by Tootsie Roll to the Products by at least May 2, 2018, cured any alleged consumer deception, but she is nonetheless still seeking restitution of "money lost" during the earlier proposed class period along with reasonable attorneys' fees.  *Id.* ¶ 3 n.1 & Prayer for Relief.[2]

During the putative class period, Tootsie Roll made $6.2 million in wholesale sales of the Products at issue to California retailers.  *See* Declaration of Barry Bowen in Support of Defendant

---

[1] Although it was unclear at the time why the Clarkson Law Firm abandoned their original case against Tootsie Roll after investing such significant time and expense, it now appears they are forum shopping to find a venue and a judge who is more sympathetic to their claims.  Judge Fischer had, at one point during the *Gordon* case, described it (from Tootsie Roll's perspective) as having no "meaningful merit, as opposed to being costly and annoying."  *Gordon v. Tootsie Roll Indust., Inc.*, 2018 WL 6133638, at *1 (C.D. Cal. Sept. 6, 2018).

[2] Tootsie Roll denies that there was ever any ongoing consumer deception that needed to be "cured" by additional disclosures or by packaging changes.

Tootsie Roll Industries, LLC's Opposition to Plaintiff's Motion to Remand ("Bowen Remand Decl.") (filed concurrently herewith) ¶ 2.  Those Products sold to California consumers at a retail value of just over $10.78 million.  *Id.* ¶ 3.

For more than two years prior to the filing of this lawsuit, Tootsie Roll litigated these same claims against the same plaintiff's counsel before Judge Fischer in the Central District of California in the separate case of *Gordon v. Tootsie Roll*, Case No. 2:17-cv-02664-DSF.  After the parties had spent hundreds of thousand dollars on the litigation (and on the eve of the class certification hearing), Plaintiff's counsel abandoned their case, resulting in the court entering judgment for Tootsie Roll.  Now, with the filing of this lawsuit, Plaintiff's counsel has started this litigation over from scratch in a bold and blatant case of forum shopping (having apparently decided that Judge Fischer's courtroom was not very accommodating).

On May 29, 2020 (just days before the judgment went final in *Gordon*), Plaintiff filed this Complaint in the Superior Court of the State of California, County of Alameda.  On July 2, 2020, formal service of the Summons and Complaint was completed on Tootsie Roll.  Tootsie Roll timely removed to this Court on July 29, 2020.  (There is no dispute between the parties about the timeliness of removal.)

On August 28, 2020, Plaintiff moved to remand, with the sole disputed issue being that the Complaint did not place at least $5 million at issue, which is the procedural minimum "amount-in-controversy" requirement of CAFA.  Accordingly, this Court's decision on remand turns entirely on whether Plaintiff's Complaint places at least $5 million in controversy.

III.    **ARGUMENT**

A.    **Standard for Removal Under CAFA**

The Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.  *See Ibarra v. Manheim Invest., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015).  Here, Plaintiff has conceded minimal diversity and sufficient class size, leaving only the $5 million amount-in-controversy requirement in dispute.  *See* Mot. 4 n.2.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

As the Supreme Court has held, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). The notice itself need not contain evidentiary submissions; such evidence establishing the amount in controversy is required to be provided only if the plaintiff contests the propriety of the defendant's removal. *Id.; see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019).[3]

If the plaintiff challenges the defendant's assertion of the amount in controversy, "'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied.'" *Ibarra*, 775 F.3d at 1197 (quoting *Dart*, 574 U.S. at 88). In presenting such evidence, a defendant seeking to show that a claim exceeds CAFA's $5 million threshold is entitled to rely on reasonable assumptions. *Arias*, 936 F.3d at 922; *Schneider v. Ford Motor Co.*, 756 Fed. App'x 699, 701 (9th Cir. 2018) (citing *Ibarra*, 775 F.3d at 1198).[4]

"The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability. In that sense, the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias*, 936 F.3d at 927 (emphasis in original; citations and marks omitted). Where a removing defendant has shown the potential recovery *could* possibly exceed $5 million based on the plaintiff's allegations (after attorneys' fees are added – *see* below), the defendant has borne its burden to show the amount in controversy exceeds $5 million. *Id.*

---

[3] In her Motion, Plaintiff appears to argue that Tootsie Roll was required in its Notice of Removal to present *evidence* sufficient to establish the amount in controversy. *See* Mot. at 5-7. This is not the standard. *Schneider*, 756 Fed. App'x at 700. Rather, a notice of removal must only contain a plausible allegation. If the notice of removal is subsequently challenged by the plaintiff, the court should then give the defendant an opportunity to introduce supporting evidence. *Dart*, 574 U.S. at 89; *Arias*, 936 F.3d at 922.

[4] In her Motion (at 4), Plaintiff asserts – citing *Lowdermilk v. U.S. Bank Nat'l Assn.*, 479 F.3d 994, 999 (9th Cir. 2007) – that, in some instances, a defendant must prove "to a legal certainty" that the claim is actually worth more than the jurisdictional amount. However, the Ninth Circuit has held that the "legal certainty" standard set forth in *Lowdermilk* has been overruled by the Supreme Court in *Standard Fire*, and that "the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013). In addition, the Supreme Court has made clear that the "presumption against federal jurisdiction" that was set out in *Lowdermilk*, 479 F.3d at 999, does not apply to cases invoking CAFA. *See Dart*, 574 U.S. at 88; *see also Arias*, 936 F.3d at 922.

---

Attorneys' fees are added on top of the maximum possible recovery to determine if the amount-in-controversy requirement has been met. *Arias*, 936 F.3d at 922. "[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Id.* An estimate of attorneys' fees at 25 percent of the potential recovery is reasonable, but the ultimate calculation is left to the discretion of the district court on remand. *Id.* at 928; *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 796 (9th Cir. 2018).

## B. Plaintiff Has Placed More Than $5 Million in Controversy.

In her Complaint, Plaintiff seeks recovery for (i) restitution on behalf of herself and a putative class and (ii) reasonable attorneys' fees. *See* Complaint at Prayer for Relief.

On restitution, Plaintiff sets out two theories of recovery.

- **<u>First</u>**, Plaintiff alleges that complete restitution should be available for all amounts received by Tootsie Roll as a result of the sales of the Products in California, in that customers "would not have purchased the Products had [they] known that the Products contained slack-fill that serves no functional or lawful purpose." *Id.* ¶ 31; *see also* ¶¶ 91, 126, 136, 146, 156, 170, 171, 188, 196.

- **<u>Second</u>**, Plaintiff alternatively alleges that partial restitution – based on the percentage of empty space as compared to the total amount paid by the customer – should be available to reimburse California customers, in that they "would have paid significantly less for the Products" if they had known that the Products contained slack fill. *Id.* ¶¶ 188, 196; *see also* ¶¶ 171 ("Plaintiff paid for candy product she never received.").

Under either of these theories of restitutional recovery, Plaintiff has placed more than $5 million in controversy in this case.[5]

### 1. Complete Restitution Theory

If Plaintiff and the putative class ultimately are allowed to recover the full amount spent in reliance on Tootsie Roll's allegedly fraudulent misrepresentations, the maximum restitution recoverable

---

[5] Tootsie Roll disputes that Plaintiff (or the putative class) is entitled to any recovery or relief or award of any kind under any theory, and it reserves its right to argue that any theory of restitutional recovery (including any set forth in connection with this motion or elsewhere) is invalid, improper, and without legal justification.

from Tootsie Roll would be the $6.2 million in wholesale sales that Tootsie Roll made to its California customers during the proposed class period.  *See Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 456 (2005) (under California's consumer protection laws, a plaintiff may recover – under a restitution theory – only such money as was actually received by the defendant.)  In addition to restitution, Plaintiff seeks an attorneys' fee award, which she approximates by applying a 25% federal benchmark to any amount obtained at trial.  *See* Mot. at 7-8.  Here, assuming a maximum recovery of $6.2 million, that would result in a fee award of $1.55 million.  Accordingly, the total amount in controversy under this restitution theory is $7.75 million.

In response, Plaintiff argues that Tootsie Roll has "not proven by a preponderance of the evidence" that "restitution would be awarded in full."  Mot. at 5.  It appears that Plaintiff is confused about what Tootsie Roll must prove to avoid remand.

In opposing remand, a defendant must only show through evidence that the amount-in-controversy requirement has been met by the maximum amount placed at issue by *the allegations in the complaint*.  *Arias*, 936 F.3d at 927.  As the Ninth Circuit has explained, the amount-in-controversy requirement is simply an estimate of the total amount placed in dispute by the plaintiff's allegations, not a prospective assessment of the defendant's liability.  *Id.*  Accordingly, all Tootsie Roll needs to do to satisfy the requirement is to present evidence that the allegations in Plaintiff's Complaint have placed at least $5 million at issue, *not* that Plaintiff is likely to recover that amount.[6]  Here, Tootsie Roll has submitted a declaration from its Treasurer showing that it made $6.2 million in wholesale sales in California during the putative class period, which resulted in $10.78 million in retail purchases by California customers.  *See* Bowen Remand Decl. ¶¶ 2-3.  Given Plaintiff's allegations that customers would flatly have refused to purchase the Products if they had been aware of the slack fill (*see* Complaint ¶¶ 31, 91, 126, 136, 146, 156, 170, 171, 188, 196), Plaintiff has placed the total $6.2 million

---

[6] Plaintiff's own cases support this non-radical principle.  *See Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 1199, 1205 (E.D. Cal. 2008) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe."); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *2 (C.D. Cal. June 29, 2017) ("For CAFA jurisdiction purposes, the amount in controversy is determined by the universe of what the plaintiff puts at-issue in the complaint." (internal marks omitted)) (citing *Lim v. Helio, LLC*, 2012 WL 359304, at *2 (C.D. Cal. Feb. 2, 2012) ("The ultimate inquiry is ... what amount is put 'in controversy' by the plaintiff's complaint ..., not what the defendant will actually owe ....")).

in wholesale sales at issue.[7]  When the possible 25% attorneys' fee award of $1.55 million is added, the $5 million amount-in-controversy requirement is easily met.

### 2.      Partial Restitution Theory

If this Court determines that a full restitution award is too remote a possibility to be reasonable, even though Plaintiff has placed such an award at issue through her allegations in the Complaint, the CAFA amount-in-controversy requirement would still be satisfied under Plaintiff's alternative partial restitution theory.

Plaintiff's partial restitution theory is based on a measure of the difference between the value of consumers' transactions had the candy boxes been full and what consumers actually received.  As Plaintiff explains it in her Motion:  "[I]f consumers actually believed the boxes were 100% full, but they only got 50% of the product, then their damages would be 50% of the sales."  Mot. at 2.  Although Plaintiff argues that the amount-in-controversy requirement is not met under this partial restitution theory, her argument is flawed because it only analyzes the *wholesale* value of the Products sold in California, as opposed to the *retail* value – which is what the consumers actually paid.

While the *wholesale* value of the Products sold in California during the proposed class period was $6.2 million, the *retail* value of those same Products (*i.e.*, the actual amount paid by the putative class members) was just over $10.78 million.  *See* Bowen Remand Decl. ¶¶ 2-3.  In her Complaint, Plaintiff alleges again and again that the candy boxes at issue were 45% empty.  *See* Complaint ¶¶ 43, 48, 75, 109-114, 119, 129 136, 146, 150, 153, 163, 164, 184; *see also id.* ¶¶ 26, 32, 42, 62.  (Plaintiff similarly alleges that she "paid for 45% of candy product she never received."  *Id.* ¶¶ 136, 146.)  Using Plaintiff's own explanation of her partial restitution theory by applying the 45% slack fill number alleged in the Complaint, we understand that:  "If consumers actually believed the boxes were 100% full, but they only got [55%] of the product, then their damages would be [45%] of the sales."  *See* Mot. at 2.  This means, according to Plaintiff's own allegations, the putative class members' maximum

---

[7] It is true, as Plaintiff points out (Mot. at 6), that Plaintiff has alleged that she and the putative class are entitled to restitution of the difference between what customers paid and the value received.  This does not change the fact that Plaintiff has also affirmatively alleged – in the alternative – that customers would not have purchased the Products *at all* had they been aware that the candy boxes contained slack fill.

possible restitution recovery for the nearly half-empty candy boxes is 45% of the amount actually spent by consumers in California, or $4.85 million.  In her moving papers (at 7-8), Plaintiff approximates a reasonable attorneys' fee award by applying a 25% federal benchmark to the potential recovery obtained at trial.  The result here would be a fee award of approximately $1.21 million, for a total recovery of $6.06 million.  Accordingly, even under this more conservative measure of restitution, Plaintiff has placed more than $5 million in controversy in her Complaint.

### C.  Plaintiff's Unsupported Allegations of "Price Premia" Cannot Be Used to Reduce the Maximum Amount Placed at Issue by the Allegations in Her Complaint.

Plaintiff argues that any amount placed at controversy by the allegations in her Complaint needs to be reduced by an alleged "price premium" that has been calculated in an undisclosed manner by her undisclosed experts.  Mot. at 3.  Specifically, Plaintiff argues that instead of using the alleged 45% "empty space" number as alleged repeatedly in her Complaint to calculate possible restitution, the Court should use a 26% "price premium" number.  In this way, Plaintiff would artificially lower the amount in controversy and avoid federal jurisdiction.

Such attempts to artificially manipulate the amount in controversy have been flatly rejected by the courts.  In *Standard Fire Insurance Company v. Knowles*, 568 U.S. 588, 595-96 (2013), the representative plaintiff similarly attempted to manipulate the amount in controversy to avoid CAFA jurisdiction by expressly stipulating that he and the putative class would simply not seek damages in excess of $5 million.  The Supreme Court rejected this attempt to avoid federal jurisdiction, holding that the representative plaintiff cannot bind prospective class members to an agreement to reduce total recovery, as such putative class members are not yet parties to the case.  It held that such an attempt to lower the amount in controversy "can tie [the representative plaintiff's] hands, but it does not resolve the amount-in-controversy question in light of [plaintiff's] inability to bind the rest of the class." *Id.* at 596.  Accordingly, the Supreme Court directed the district court to "ignore[]" such efforts at artificially reducing the aggregate amount in controversy on behalf of class members who are not yet parties to the case. *Id.*; *see also Rodriguez*, 728 F.3d at 978.

Here, as shown above, Plaintiff has placed over $5 million at issue through the allegations in her Complaint.  Here attempts to artificially reduce that amount below the required jurisdictional threshold

by binding the putative class to opinions set out by her undisclosed experts relating to alleged "price premia" that – if followed – would lower the aggregate recovery of the class.  This is simply another attempt by a plaintiff to bind putative class members to a lower potential recovery at the pleadings stage in order to avoid federal jurisdiction.  Given the holding of the Supreme Court in *Knowles*, this effort should be rejected.

### D.    An Award of Attorneys' Fees Is Not Justified Against Tootsie Roll.

Tootsie Roll believes that Plaintiff's remand motion will fail on the merits, and accordingly no fees or costs should be awarded pursuant to 28 U.S.C. Section 1447(c).

Even if this Court disagrees, and instead remands this case to state court, an award of fees and costs would not be appropriate, as Tootsie Roll had an objectively reasonable basis for seeking removal. *See, infra,* 5-9.  As the Supreme Court has held:

> Absent unusual circumstances, courts may award attorney fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.

*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

## IV.    CONCLUSION

For the reasons stated herein, Tootsie Roll respectfully requests that this Court deny Plaintiff's Motion to Remand in its entirety.


Dated: October 26, 2020                      DONAHUE FITZGERALD LLP


                                             By: */s/David M. Jolley*
                                             _____
                                                David M. Jolley
                                                Attorneys for Defendant
                                                TOOTSIE ROLL INDUSTRIES, LLC