DAVID M. JOLLEY (SBN 191164)
Email:  djolley@donahue.com
DONAHUE FITZGERALD LLP
1999 Harrison Street, 26th Floor
Oakland, California 94612-3520
Telephone: (510) 451-3300
Facsimile:  (510) 451-1527

Attorneys for Defendant
TOOTSIE ROLL INDUSTRIES, LLC

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MAISEL, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>TOOTSIE ROLL INDUSTRIES, LLC, and DOES 1 through 10, inclusive,<br><br>        Defendants. | Civil Case No.: 3:20-cv-05204-SK<br><br>**DEFENDANT TOOTSIE ROLL INDUSTRIES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT OF PLAINTIFF ELIZABETH MAISEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:      Hon. Sallie Kim<br>Courtroom:  C<br>Date:       April 19, 2021<br>Time:       9:30 a.m.<br><br>Complaint filed:  May 29, 2020 |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on April 19, 2021 at 9:30 a.m., or as soon thereafter as the matter may be heard before the Honorable Sallie Kim at the United States District Court for the Northern District of California, San Francisco Division, Courtroom C, 450 Golden Gate Ave., San Francisco, CA 94102, defendant Tootsie Roll Industries, LLC ("Tootsie Roll") will, and hereby does, move for an order dismissing the Complaint of plaintiff Elizabeth Maisel with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that the Complaint fails to state a claim upon which relief can be granted.

This motion is based on this Notice of Motion and Motion to Dismiss Complaint, the attached Memorandum of Points and Authorities in Support of Motion to Dismiss, the Declaration of Gordon Brown, any additional briefing on this subject, and on any such further evidence and argument as may be presented to the Court at or before the hearing on this matter.

DATED:  March 10, 2021                    DONAHUE FITZGERALD LLP


                                          By:    */s/ David M. Jolley*
                                                 DAVID M. JOLLEY

                                          Attorneys for Defendant
                                          TOOTSIE ROLL INDUSTRIES, LLC

**<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION ......................................................................................... 1

II.     FACTUAL BACKGROUND............................................................... 2

       A.    Plaintiff's Allegations ................................................... 2

       B.    Prior Slack-Fill Lawsuits Against Tootsie Roll .................................. 6

III.    LEGAL STANDARDS ................................................................... 7

       A.    Procedural Rules ................................................................... 7

IV.    ARGUMENT.............................................................................. 8

       A.    Plaintiff Fails to State a Claim Under the UCL, FAL, or CLRA, or for Common Law Fraud. ................................................... 8

       B.    Plaintiff Fails to State a Claim for Breach of Implied Warranty of Merchantability. ..................................................... 20

       C.    Plaintiff Fraud-Based Claims Should Be Dismissed.......................... 20

       D.    Plaintiff Fails to State a Claim for Unjust Enrichment....................... 21

       E.    Plaintiff's Claim for Violation of the CLRA Should Be Dismissed for Plaintiff's Failure to Send a Pre-Filing Demand Letter as Required by Statute. ..................................................... 21

V.     CONCLUSION............................................................................ 23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Alce v. Wise Foods, Inc.*,
    2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018) .................................................................12, 13, 16

*In re Arden Assorted Candy Drops*,
    80 F. Supp. 911 (D. Mass. 1948) .................................................................................. 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................... 7, 8

*Bautista v. CytoSport, Inc.*,
    223 F. Supp. 3d 182 (S.D.N.Y. 2016) ...........................................................................16, 17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................... 7, 8

*Benson v. Fannie May Confections Brands, Inc.*,
    2018 WL 1087639 (N.D. Ill. Feb. 28, 2018) ................................................................. 16

*Benson v. Fannie May Confections Brands, Inc.*,
    944 F.3d 639 (7th Cir. 2019) .........................................................................................10, 11

*Bush v. Mondelez Int'l, Inc.*,
    2016 WL 5886886 (N.D. Cal. Oct. 7, 2016) ........................................ 5, 12, 13, 14, 15, 16

*Bush v. Mondelez Int'l, Inc.*,
    2016 WL 7324990 (N.D. Cal. Dec. 16, 2016)..............................13, 14, 15, 16, 18, 19, 20

*Buso v. ACH Food Companies, Inc.*,
    445 F. Supp. 3d 1033 (S.D. Cal. 2020) ........................................................................ 13

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ...................................................................................... 8

*Camasta v. Omaha Steaks Int'l, Inc.*,
    2013 WL 4495661 (N.D. Ill. Aug. 21, 2013) ............................................................... 11

*Collins v. eMachines, Inc.*,
    202 Cal. App. 4th 249 (2011) ....................................................................................... 9, 21

*Daniel v. Mondelez Int'l, Inc.*,
    287 F. Supp. 3d 177 (E.D.N.Y. 2018)..........................................................................13, 16, 18

*Daniel v. Tootsie Roll Indust., LLC*,
  2018 WL 3650015 (S.D.N.Y. Aug. 8, 2018) ............................................ 6, 13, 15, 16, 21

*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ............................................................................ 19

*Ebner v. Fresh Inc.*,
  2013 WL 9760035 (C.D. Cal. Sept. 11, 2013), *aff'd* 838 F.3d (9th Cir. 2016) ........................ 13, 14

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) .......................................................................... 13, 14, 15

*Fermin v. Pfizer Inc.*,
  215 F. Supp. 3d 209 (E.D.N.Y. 2016) ................................................................. 13

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) .......................................................................... 12

*Gordon v. Tootsie Roll Indus., Inc.*,
  Dkt. No. 150, 9/26/18 ................................................................................ 6

*Gubala v. Allmax Nutrition, Inc.*,
  2015 WL 6460086 (N.D. Ill. Oct. 26, 2015) ......................................................... 13

*Gubala v. CVS Pharm., Inc.*,
  2015 WL 3777627 (N.D. Ill June 16, 2015) ......................................................... 13

*Gutierrez v. Carmax Auto Superstores Cal.*,
  19 Cal. App. 5th 1234 (2019) ....................................................................... 20

*Hairston v. S. Beach Beverage Co.*,
  2012 WL 1893818 (C.D. Cal. May 18, 2012) ......................................................... 12

*Hodges v. Apple Inc.*,
  2013 WL 4393545 (N.D. Cal. Aug. 12, 2013) ........................................................ 19

*Ibarrola v. Kind, LLC*,
  83 F. Supp. 3d 751 (N.D. Ill. 2015) ................................................................ 13

*Iglesia v. Tootsie Roll Industries, LLC*
  (Case No. 3:20-cv-18751) ............................................................................ 7

*Izquierdo v. Mondelez Int'l, Inc.*,
  2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ......................................................... 11, 16

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009), The UCL ............................................................. 8, 20

*Keilholtz v. Superior Fireplace Co.*,
2009 WL 839076 (N.D. Cal. Mar. 30, 2009)...........................................................................21, 22

*Kim v. Carter's Inc.*,
598 F.3d 362 (7th Cir. 2010) .................................................................................................. 10

*Kommer v. Bayer Consumer Health*,
252 F. Supp. 3d 304 (S.D.N.Y. 2017) ....................................................................................... 6

*Kwikset Corp. v. Super. Ct.*,
51 Cal.4th 310 (2011)............................................................................................................... 9

*Laster v. T-Mobile USA, Inc.*,
407 F.Supp.2d 1181 (S.D.Cal.2005) ....................................................................................... 22

*Lavie v. Procter & Gamble Co.*,
105 Cal. App. 4th 496 (2003) ................................................................................................. 12

*Lieberson v. Johnson & Johnson Consumer Cos.*,
865 F. Supp. 2d 529 (D.N.J. 2011) ......................................................................................... 11

*Lozano v. AT&T Wireless Servs., Inc.*,
504 F.3d 718 (9th Cir. 2007) .................................................................................................. 19

*Marder v.* Lopez,
450 F.3d 445 (9th Cir. 2006) .................................................................................................... 5

*Martin v. Wm. Wrigley Jr. Co.*,
2017 WL 4797530 (W.D. Mo. Oct. 24, 2017)......................................................................... 16

*Martinez-Leander v. Welnx Life Sciences, Inc.*,
2017 WL 2616918 (C.D. Cal. Mar. 6, 2017)......................................................................13, 16

*Mason v. Coca-Cola Co.*,
774 F. Supp. 2d 699 (D.N.J. 2011) ......................................................................................... 11

*McGee v. S-L Snacks National*,
982 F.3d 700 (2020) ......................................................................................................9, 10, 12

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) .................................................................................................. 7

*Meyer v. Sprint Spectrum L.P.*,
45 Cal.4th 634 (2009)............................................................................................................... 9

*Naimi v. Starbucks Corp.*,
798 Fed. App'x 67 (9th Cir. 2019) .......................................................................................... 11

*O'Connor v. Henkel Corp.*,
2015 WL 5922183 (E.D.N.Y. Sept. 22, 2015) ...................................................... 18

*Outboard Marine Corp. v. Superior Court*,
52 Cal.App.3d 30 (1975) ...........................................................................21, 22

*Peterson v. Celleo Partnership*,
164 Cal. App. 4th 1583 (2008) ......................................................................... 21

*Robinson v. Managed Accounts Receivables Corp.*,
654 F. Supp. 2d 1051 (C.D. Cal. 2009) .............................................................. 8

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ............................................................................. 7

*Stemm v. Tootsie Roll Indus., Inc.*,
474 F. Supp. 3d 734 (N.D. Ill. 2019)........................................................7, 9, 10, 11

*In re Vioxx Class Cases*,
180 Cal.App.4th 116 (2009) .............................................................................. 9

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) ........................................................................... 12

*Workman v. Plum Inc.*,
141 F. Supp. 3d 1032 (N.D. Cal. 2015)..........................................................13, 15

*Wuertzburger v. Kentucky Fried Chicken*,
2017 WL 6416296 (S.D.N.Y. Dec. 13, 2017) ................................................... 16

*Yumul v. Smart Balance, Inc.*,
733 F. Supp. 2d 1117 (C.D. Cal. 2010) ............................................................ 20

**Statutes**

21 U.S.C. § 343-1(a) .......................................................................................... 16

Cal. Bus. & Prof. Code § 12606.2(c) ................................................................ 16

Cal. Bus. & Prof. Code § 17200 ......................................................................... 8

Cal. Bus. & Prof. Code § 17500 ......................................................................... 8

Cal. Civ. Code § 1770 ....................................................................................... 21

Cal. Civ. Code § 1770(a) .................................................................................... 8

Cal. Civ. Code § 1782(a)(1) .............................................................................. 21

Cal. Civ. Code § 1782(a)(2) .............................................................................. 21

**Other Authorities**

21 C.F.R. § 100.100 ......................................................................................................... 14

21 C.F.R. § 100.100(a) .................................................................................................... 16

21 C.F.R. § 100.100(a)(1) ............................................................................................... 17

21 C.F.R. § 100.100(a)(1)-(6) ..................................................................................... 4, 16

21 C.F.R. § 100.100(a)(2) ............................................................................................... 18

21 C.F.R. § 100.100(a)(3) ............................................................................................... 17

58 Fed. Reg. 2957-01 ....................................................................................................... 4

58 Fed. Reg. 2957-01, 2961 ........................................................................................... 18

58 Fed. Reg. 2959-60 ........................................................................................................ 4

58 Fed. Reg. 64123-01 ...................................................................................................... 4

58 Fed. Reg. 64135 ............................................................................................................ 4

Fed. R. Civ. P. 8 ............................................................................................................. 16

Fed. R. Civ. P. 8(a)(2) ...................................................................................................... 7

Fed. R. Civ. P. 9(b) ....................................................................................... 8, 16, 20, 21

Fed. R. Civ. P. 9(b) ........................................................................................................ 20

Fed. R. Civ. P. 12 ...................................................................................................5, 6, 13

Fed. R. Civ. P. 12(b)(6) ............................................................................... 1, 6, 7, 23

TOOTSIE ROLL'S MOTION TO DISMISS COMPLAINT        Case No. 3:20-cv-05204-SK

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

This case is a copy-cat of "slack-fill" class actions filed in other jurisdictions concerning Tootsie Roll products, including Junior Mints and Sugar Babies.  Two district court judges have already dismissed nearly identical claims alleged in nearly identical complaints.  Slack fill is the empty space in product packaging.  According to plaintiff, until May 2018, Tootsie Roll's candy boxes were too big (allowing for too much slack fill) for the volume of candy they contained without providing adequate disclosures to customers of the amount of candy being purchased.  Plaintiff therefore asserts claims on behalf of a New Jersey class for alleged violations of California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA"), along with breach of the implied warranty of merchantability, fraud, and unjust enrichment.  The Complaint should be dismissed in its entirety pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted.

At the outset, plaintiff fails plausibly to allege that the slack fill in the candy boxes at issue did not serve any permitted functional purpose – allegations that are a necessary predicate for the packaging to be materially misleading.  Moreover, although plaintiff's primary grievance is that the product packaging at issue contained nonfunctional slack fill, she readily admits in his Complaint that any "consumer deception" caused by the alleged slack fill was entirely "eliminated" by Tootsie Roll placing additional disclosures on the exterior of the boxes in May 2018.  Complaint ¶ 3 n.1; *see also id.* ¶ 3 (admitting that slack-fill issues could be cured (and were cured) through "labeling changes").  Accordingly, even if the packaging contained nonfunctional slack fill (which it did not), plaintiff acknowledges that the extra space in the boxes would not be misleading with proper disclosures and labeling.

Here, the challenged boxes contained clear disclosures of their contents throughout the entirety of the proposed class period.  Plaintiff fails plausibly to allege that – given the clear labeling on the boxes during the relevant period – a reasonable consumer would have been materially misled by the packaging at issue.  The front of every challenged box conspicuously and accurately disclosed the

weight of the candy contained inside.  The "Nutrition Facts" panel on each of the boxes also disclosed both the serving size (in pieces and grams) and the total number of servings per container, thereby informing the customer of the number of pieces in each box.  At all times, the Junior Mints box contained a disclosure stating "PRODUCT SOLD BY WEIGHT NOT VOLUME."  Such clearly visible disclosures of the contents are fatal to plaintiff's ability to plead any deceptive act.

In addition, all of plaintiff's claims should be dismissed for the separate and additional reason that she has failed to plead a cognizable injury – namely, that she was deprived the benefit of her bargain by being deceived into paying more than the actual value of the property (such as if the products were defective).

Moreover, if they were to otherwise survive, plaintiff fails to plead his fraud-based claims with the requisite particularity.  In addition, his CLRA claim should be dismissed for failure to send a pre-filing demand letter as required under the statute.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff's Allegations

Tootsie Roll makes various boxed candy products, including Junior Mints (3.5 oz. boxes) and Sugar Babies (6.0 oz. boxes) (the "Products").  *See* Complaint at Introductory Paragraph (p. 1); *id*. ¶ 1 Fig. 1 & Fig. 2.  It sells these products worldwide, including in retail outlets in California.  *Id*. ¶¶ 1, 9.

Junior Mints are "Creamy mints in pure chocolate" with a soft fondant center.  *See id*. ¶ 1, Fig. 1. Sugar Babies are "Candy Coated Milk Caramels."  *See id*. Fig. 2.  Both candy products, which are non-uniform in shape, are packaged in opaque rectangular cardboard boxes.  *See id*. Fig. 1 & Fig. 2.  For the relevant time period (*i.e.,* until May 2018), the front of each box clearly displayed the net weight of the candy inside.  *See id*. ¶ 1 Fig. 1 & Fig. 2.  The back of each box also stated the number of servings in each container and the number of candy pieces in each serving, thereby fully disclosing the number of candy pieces in each box (*i.e.,* about 2.5 servings x 16 candies per serving = about 40 candies per box of Junior Mints; about 4.5 servings x 27 candies per serving = about 121 candies per box of Sugar Babies). *See id*. Fig. 8.  Additionally, a disclaimer on the back of each Junior Mints box stated: "PRODUCT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SOLD BY WEIGHT NOT VOLUME." *See id.* The following are images of the front and back of the boxes as depicted in the Complaint (¶ 43 Fig. 8):



In early 2018, plaintiff allegedly purchased a 3.5 oz. Junior Mints box and a 6.0 oz. Sugar Babies box from a Target store in Berkeley, California for an unspecified amount of money.  Complaint ¶ 9. Plaintiff alleges that she "relied upon the opaque packaging, including the size of the box and product label, ... to indicate the amount of candy contained therein was commensurate with the size of the box, and she would not have purchased the Product, or would not have paid a price premium for the Product, had she known that the size of the box and Product label were false and misleading." *Id.*  Plaintiff does not allege that she was prevented from viewing the weight or serving disclosures (in fact, she alleges she actually relied on the label in making his purchase), nor from holding, shaking, or otherwise inspecting the box prior to purchase.  Plaintiff does not allege the candy itself was defective in some way – she just wanted more of it.

Plaintiff alleges the challenged Products were 33-50% empty, and that the remaining space constituted non-functional slack fill. *Id.* ¶¶ 42, 62. But, as plaintiff recognizes, slack fill is permitted if it serves a "functional or lawful purpose." *Id.* ¶ 31. The Food and Drug Administration ("FDA") recognizes that "in many products, a certain level of slack-fill has a functional purpose (e.g., protecting the product) and, therefore, can be justified." *Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 2957-01, 2959-60 (Jan. 6, 1993). Slack fill is functional – and therefore expressly permitted – if it is "(a) necessary as part of the manufacturing process, (b) is the result of contents settling during shipping, or (c) is necessary to protect the product." *See* 21 C.F.R. § 100.100(a)(1)-(6). Consumer products "may have large levels of slack fill" that are entirely justified. *See Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 2957-01, 2959-60; *see also* 58 Fed. Reg. 64123-01, 64135 (Dec. 6, 1993). There is no specific numerical value" that determines whether slack fill is misleading. 58 Fed. Reg. 64123-01, 64135.

Plaintiff alleges no well-pleaded *factual* allegations addressing the degree to which the product packaging served the permissible functions enumerated by regulation. Instead, plaintiff merely asserts conclusory statements (supported only by anonymous conclusory findings of unnamed experts) that the empty space in the boxes was not needed during the packaging process, did not occur due to settling, and was not needed to protect the candy. Complaint ¶¶ 33-41. In large part, plaintiff premises his non-functionality argument by pointing to two other "comparator" candy boxes having less slack fill: (a) the 4.3 oz. Boston Baked Beans and (b) the 4.13 oz. Junior Mints XL. *See id.* ¶¶ 44-65.

**Boston Baked Beans**: A cursory examination of the size of the Boston Baked Beans box featured in the Complaint reveals that it is *not* of "identical size, shape, [and] volume" to the boxes of the challenged Products. *See id.* ¶ 59 Fig. 11, ¶ 60. In any event, such a claim – that the Boston Baked Bean box is "identical" to both of the challenged Junior Mints and Sugar Babies boxes – would be impossible to be true, as the Junior Mints and Sugar Babies boxes are very different sizes themselves. The challenged 3.5 oz. Junior Mints box measures 5.5 inches tall by 3.25 inches wide by 0.6875 inches

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

deep.  *See* Declaration of Gordon Brown ("Brown Decl.") ¶ 3.[1]  The challenged 6.0 oz. Sugar Babies box measures 6.75 inches tall by 3.5 inches wide by 0.75 inches deep.  *See* Brown Decl. ¶ 5.  Nor are Boston Baked Beans and Junior Mints candies of "nearly identical size, shape, and density," as plaintiff alleges.  Complaint ¶ 61.  As demonstrated by the pictures of these products in the Complaint, Boston Baked Beans are small "candy coated peanuts" with hard interiors and hard outer shells; Junior Mints, which are considerably wider in diameter, consist of a soft mint filling coated in a thin layer of chocolate (demonstrated by the picture of the Junior Mint candy on the front of the package, which shows one piece cut open with the soft mint filling dripping out).  Compare *id.* ¶ 59 Fig. 11 with ¶ 1 Fig. 1.

**Junior Mints XL**:  Plaintiffs also allege that the 4.13 oz. "Junior Mints XL" box is of "identical size, physical dimensions, [and] shape" of the Products (*i.e.*, the 6.0 oz. Sugar Babies box and the 3.5 oz. Junior Mints box), but contains more candy.  *Id.* ¶ 45.  Again, it is impossible for the Junior Mints XL box to be "identical" to both of the candy boxes challenged by plaintiff, as those two Product boxes are themselves very different in size.  To the extent plaintiff is only comparing the Junior Mints XL box to the "regular" challenged Junior Mints box, his argument still fails.  In fact, the "XL" box is 0.0625 inches deeper than the challenged "regular" box, creating approximately 9% more volume in the box.  *See* Brown Decl. ¶ 4.  Because Junior Mints candy pieces are roughly as wide as the "regular" box is deep (0.6875 inches), *see* Complaint ¶ 2 Fig. 3, it is evident that the additional depth of the "XL" box, while seemingly minor, allows the box to accommodate more candy.

Based on allegations that the Product boxes are oversized and do not reasonably inform customers of their contents, plaintiff asserts claims on behalf of a class of California consumers for deceptive and unfair trade practices under the UCL (Count I), FAL (Count II), CLRA (Count III), unjust enrichment (Count IV), common law fraud (Count V), and breach of implied warranty (Count VI).  Complaint ¶¶ 97, 147, 157, 175, 182, 190 (headings); *see id.* ¶ 85 (California class).

---

[1] This Court may consider evidentiary declarations showing the actual dimensions of the relevant boxes because pictures of the boxes are referenced throughout the Complaint (*See* Complaint Figures 1-10), the dimensions are central to plaintiff's claims, and there is no actual dispute that the Junior Mints boxes are smaller than the Sugar Babies boxes.  *See Marder v.* Lopez, 450 F.3d 445, 448 (9th Cir. 2006); *Bush v. Mondelez Int'l, Inc.*, 2016 WL 5886886, at *1 n.1 (N.D. Cal. Oct. 7, 2016) (court may consider additional information about product labels in slack-fill suit on Rule 12 motion).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff seeks "an order granting Plaintiff and the Class restitution." *Id.* at p. 38 ("Prayer for Relief"). Plaintiff does not seek any injunctive relief. *See id.*

**B.**     **Prior Slack-Fill Lawsuits Against Tootsie Roll**

This current case is now the ***fifth*** time Tootsie Roll has faced nearly-identical "slack fill" claims in connection with its Junior Mints and/or Sugar Babies candy products in federal court – three of which have been brought by the same Clarkson Law Firm that represents plaintiff in this case.

The first was the *Gordon v. Tootsie Roll Industries, Inc.* (Case No. 2:17-cv-02664, C.D. Cal), filed by the Clarkson Law Firm (the same counsel that represents plaintiff in this instant case) on February 10, 2017, in which Tootsie Roll prevailed after investing significant time and expense. *See Gordon v. Tootsie Roll Indus., Inc.*, Dkt. No. 150, 9/26/18 Judgment ("IT IS ORDERED AND ADJUDGED that plaintiff take nothing, that the action be dismissed and that defendant recover its costs of suit …."). Significantly, during the Rule 12 briefing in that case, the district court was not presented with (and did not consider) the argument that the plaintiff failed adequately to allege actual injury. Nonetheless, Tootsie Roll ultimately obtained a judgment against the plaintiff.

The second was *Daniel v. Tootsie Roll Industries*, LLC (]Case No. 1:17-cv-07541, S.D.N.Y.), in which Judge Naomi Reice Buchwald decided – as a matter of law – that the displayed weight, serving size, and other information on the Junior Mint boxes gave a reasonable customer more than enough information about what is contained inside. "The law simply does not provide the level of coddling plaintiffs seek." *Daniel*, 2018 WL 3650015, *13 (S.D.N.Y. Aug. 1, 2018) (citing and quoting *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 312 (S.D.N.Y. 2017) ("Assuming that a reasonable consumer might ignore evidence plainly before him attributes to consumers a level of stupidity that the Court cannot countenance …." (internal marks omitted)). The complaint was dismissed pursuant to FRCP 12(b)(6).

The third case – *Stemm v. Tootsie Roll Industries, Inc.* (Case No. 1:18-cv-02289, N.D. Ill.) – was also dismissed on a Rule 12 motion, but for an entirely different reason. Rather than relying on the clear disclosures of weight and number of pieces of candy in each box, Judge John Z. Lee held that the candy in the box was not alleged to have been defective or actually worth less than the amount the plaintiff

paid for it.  *Stemm*, 374 F. Supp. 3d 734, 743 (N.D. Ill. 2019).  Accordingly, the plaintiff failed to plead a cognizable injury.

The Clarkson Law Firm has now filed two more nearly identical complaints, again challenging the packaging of Tootsie Roll's candy products.  *Iglesia v. Tootsie Roll Industries, LLC* (Case No. 3:20-cv-18751) is pending in the District of New Jersey (Tootsie Roll has filed a similar motion to dismiss in that case).  This current case was filed on May 29, 2020, in Alameda County Superior Court.  Tootsie Roll timely removed the case to this Court in June 2020.

## III.   LEGAL STANDARDS

### A.   Procedural Rules

#### 1.   Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) if the plaintiff either fails to state a cognizable legal theory or has not alleged sufficient facts to support a cognizable legal theory.  *See id.* at 562-63.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  The complaint must allege facts, which, if taken as true, raise more than a speculative right to relief.  *See Bell Atl. Corp.*, 550 U.S. at 555.

A complaint must be dismissed under Rule 12(b)(6) if the court determines that it "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  This is a context-specific task requiring the court "to draw on its judicial experience *and common sense*."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added).  While allegations of fact must be assumed to be true, the court need not accept as true allegations that "are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" or that "contradict matters properly subject to judicial notice or by exhibit."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see Iqbal*, 556 U.S. at 678.  Nor is the court

"bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Where the well-pleaded facts do not permit the court to infer more than the mere *possibility* of misconduct," the complaint has not shown the pleader is entitled to relief. *Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1057 (C.D. Cal. 2009) (internal marks omitted) (quoting *Iqbal*, 556 U.S. at 678). Rather, the pleader must "allege more by way of factual content to nudge his claim of [unlawful action] across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (internal marks omitted).

A plaintiff must also state with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a pleading must identify "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal marks omitted). Since plaintiff's UCL, FAL, and CLRA claims all sound in fraud, they – like his common law fraud claim – must meet the heightened pleading requirements of Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-27 (9th Cir. 2009).[2]

## IV.   ARGUMENT

Plaintiff's Complaint should be dismissed in its entirety for failure to state a claim on which relief can be granted. In the alternative, plaintiff's fraud-based claims fail because they are not pled with particularity, and plaintiff's CLRA claim fails for not meeting the statutory pre-filing requirements.

### A.   Plaintiff Fails to State a Claim Under the UCL, FAL, or CLRA, or for Common Law Fraud.

Plaintiff fails to state a claim under the UCL, FAL, or CLRA, or for common law fraud. *First*, plaintiff fails adequately to plead that the alleged deception was the proximate cause of an ascertainable

---

[2] The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The CLRA similarly proscribes various "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease or goods or services to any consumer." Cal. Civ. Code § 1770(a). The FAL makes it unlawful for a business to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

loss suffered by plaintiff.  *Second*, given the clear and accurate disclosures and labeling (as well as other visual and auditory clues), plaintiff fails plausibly to allege that a "significant portion" of the consuming public would be deceived by the alleged slack fill in Tootsie Roll's Junior Mints or Sugar Babies boxes – as is required to state a claim under the FAL, CLRA, the "fraudulent" prong of the UCL, or fraud generally.  *Third*, insofar as plaintiff's claims are premised upon a violation of federal slack-fill regulations, plaintiff fails plausibly to allege that the empty space in the box does not serve one of the six functional purposes permitted under the governing regulations.  *Fourth*, plaintiff's claim under the "unfair" prong of the UCL fails under either of the tests articulated by California courts.

### 1.    Plaintiff Fails Plausibly to Plead Injury in Fact.

All of plaintiff's claims, including her UCL, FAL, CLRA, and common law fraud claims, fail for the independent reason that she fails to plead facts showing the challenged conduct was the proximate cause of an ascertainable loss.  *See McGee v. S-L Snacks National*, 982 F.3d 700, 705-08 (2020); *see also Stemm v. Tootsie Roll Indus., Inc.*, 474 F. Supp. 3d 734, 743-44 (N.D. Ill. 2019) (applying similar "ascertainable loss" rule to slack-fill claim involving Junior Mints).  To maintain standing under the UCL and FAL, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury; and (2) show that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim."  *Kwikset Corp. v. Super. Ct.,* 51 Cal.4th 310, 323 (2011).  Similarly, the CLRA requires that a plaintiff allege a "tangible increased cost or burden to the consumer."  *Meyer v. Sprint Spectrum L.P.,* 45 Cal.4th 634, 644 (2009).  This requires showing "not only that a defendant's conduct was deceptive but that the deception caused them harm."  *In re Vioxx Class Cases,* 180 Cal.App.4th 116, 129 (2009).  Under California law, common law fraud also requires a showing of damages/injury in fact.  *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 259 (2011).

At the pleading stage, a plaintiff must set forth sufficient factual allegations that, if proven true, would permit a factfinder to determine that she suffered at least *some* injury in fact resulting from the challenged conduct that can be redressed through litigation.  *McGee*, 982 F.3d at 705.  Economic injury may occur if the seller's deception deprives the plaintiff of the benefit of his bargain by causing him to

pay more than the actual value of the property, *id.* at 704-05, or if the Products were defective or worth less than she actually paid, *id.* at 707.  This is not the same as a consumer – such as plaintiff here – who is simply disappointed she did not get more or she did not receive a bargain.

The Ninth Circuit recently explained this concept in *McGee*, 982 F.3d at 705-08.  There, the plaintiff was suing because the popcorn she purchased contained trans-fats (an allegedly non-healthy ingredient).  The court rejected her claim, finding that "her assumptions [about the contents of the product] were not included in the bargain, particularly given the labeling disclosure" that contradicted her assumptions.  *Id.* at 706.  Accordingly, unless the product contained a "hidden defect" or was "worth objectively less" than the consumer paid for it, the plaintiff has failed to allege injury in fact, especially given the product label's clear disclosure of the very facts at issue.  *Id.* at 707.

This rule on pleading actual injury, as set out in *McGee*, is also followed in other Circuits, such as the Seventh (as set out in *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010)).  Following this rule, the Northern District of Illinois dismissed a very similar slack-fill complaint against Tootsie Roll challenging the packaging of the same 3.5 oz. boxes of Junior Mints at are at issue here, holding that the plaintiff:

> has not alleged that the candy that she received was defective or worth less than the dollar she paid for it.  Instead, she claims that she expected to receive more candy than she did.  [Citation.]  But [plaintiff] does not allege that the candy that she did receive was defective in some way, or that she would have paid less in the marketplace for comparable products, but for the purported deception.  That she expected to receive something more than what she got, in and of itself, does not constitute actual damages.

*Stemm*, 374 F. Supp. 3d at 743.

In a similar slack-fill case, the Seventh Circuit – applying the same actual injury rule – also reached the same conclusion in *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019).  The court held that the plaintiffs failed to plead "actual damages" because they did not allege "that the seven ounces of chocolate in the box were worth less than the $9.99 that they paid."  *Id.*  "They do not claim that the Mint Meltaways or Pixies were defective or that they could have acquired

them for a better price.  Instead, both plaintiffs assert that they would not have purchased the candy if they had known the amount of slack-fill."  *Id.*

Similarly here, plaintiff alleges that she purchased 3.5 oz. of Junior Mints candy and 6.0 oz. of Sugar Babies candy, which is exactly what she received.  Complaint ¶ 1 Fig. 1, ¶ 2 Fig. 2, ¶ 9.  Plaintiff does not claim the candy was defective or somehow worth less than she paid, just that she (unjustifiably) expected to receive more of it.  Nor does she claim that she could have purchased a greater amount of the candy for the same price (and in fact she could not have done so).  In short, plaintiff received the full benefit of her bargain.

In addition to the courts in *Stemm* and *Benson*, other courts have dismissed similar deceptive packaging claims for failure to plead a cognizable injury.  *See, e.g., Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 704 (D.N.J. 2011) (NJCFA claim requires non-conclusory showing of ascertainable loss); *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (rejecting the plaintiffs' allegations that they "were financially injured after purchasing the Candy and receiving less Candy than they believed they bargained for"); *Camasta v. Omaha Steaks Int'l, Inc.*, 2013 WL 4495661, at *11 (N.D. Ill. Aug. 21, 2013) (plaintiff's "defeated expectations do not constitute actual harm" absent a showing that the products "were worth less than he paid").

Plaintiff also alleges that "he would not have purchased the Product, or would not have paid a price premium for the Product" except for Tootsie Roll's false advertising.  Complaint ¶ 9.  Again, such unsupported speculative allegations fall short of the required showing that plaintiff paid more than the value of the candy she purchased.  *See Naimi v. Starbucks Corp.*, 798 Fed. App'x 67, 70 (9th Cir. 2019) ("The bare recitation of the word 'premium' does not allege a cognizable injury."); *Lieberson v. Johnson & Johnson Consumer Cos.,* 865 F. Supp. 2d 529 (D.N.J. 2011) ("absent any specific information concerning the price of the Products or the price of any comparable products, Plaintiff's allegations concerning the ascertainable loss [or price premium] are nothing more than unsupported conclusory statements that are insufficient to withstand a motion to dismiss"); *see also* 11/30/20 Order of this Court (Dkt. No. 22) (rejecting plaintiff's "totally unsupported" allegations of a "price premium")  Such conclusory allegations in a complaint simply cannot overcome the admitted fact that the product labeling

affirmatively disclosed the very information (*i.e.*, the actual net weight of the product and the number of candy pieces in each box) upon which the alleged price premium was based. *See, e.g., McGee*, 982 F.3d at 706.

Given that plaintiff has failed to allege the Products had a hidden defect or were worth less than she paid, his UCL, FAL, and CLRA claims (along with his other claims that require a showing of actual injury) should be dismissed.

### 2.    Plaintiff Fails Plausibly to Allege Any Consumer Deception.

Plaintiff's UCL, FAL, and CLRA claims also should be dismissed because plaintiff fails plausibly to allege that a reasonable consumer would have been misled by the size of either the 3.5 oz. box of Junior Mints or the 6.0 oz. box of Sugar Babies, given the clear and accurate weight and serving disclosures (as well as the disclosure on each Junior Mints box stating: "PRODUCT SOLD BY WEIGHT NOT VOLUME").

To state a claim under the UCL, FAL, or CLRA, plaintiff must allege that the Products were "likely to deceive" a reasonable consumer.  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).  Under this standard, plaintiff must "show that members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995).  This requires more than a mere possibility that a candy box "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  *Lavie*, 105 Cal. App. 4th at 508.  Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Id.*  **"[W]here a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate."**  *Hairston v. S. Beach Beverage Co.*, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) (emphasis added).

Even setting aside any clear disclosures on the boxes, "[o]paque containers with slack-fill at the top are common in the snack market."  *Bush v. Mondelez Int'l, Inc.*, 2016 WL 5886886, at *3 (N.D. Cal. Oct. 7, 2016) ("*Bush I*").  "Targeted consumers thus expect some slack-fill."  *Id.* (internal marks omitted); *accord Alce v. Wise Foods, Inc.*, 2018 WL 1737750, at *11 (S.D.N.Y. Mar. 27, 2018) (same);

*Daniel v. Mondelez Int'l, Inc*., 287 F. Supp. 3d 177, 191 (E.D.N.Y. 2018) (same); *In re Arden Assorted Candy Drops*, 80 F. Supp. 911, 913 (D. Mass. 1948) (the "ordinary person" should "expect some slack or air space" in products packed by machines).  Thus, "no reasonable consumer expects the … overall size of the packaging to reflect directly the quantity of product contained therein."  *Ebner v. Fresh, Inc*., 838 F.3d 958, 967 (9th Cir. 2016) ("*Ebner II*"; *accord Bush I*, 2016 WL 5886886, at *3.

Here, the allegedly deceptive packaging at issue clearly sets out the very information that plaintiff alleges was misrepresented – the volume of the candy contained in the candy boxes, both in net weight and in number of pieces.  Not surprisingly, a large number of district courts have held that "where the package itself discloses the actual unit counts [and product weight], a 'reasonable consumer' could not be misled."  *Buso v. ACH Food Companies, Inc*., 445 F. Supp. 3d 1033, 1038 (S.D. Cal. 2020); *see also, e.g., Daniel v. Tootsie Roll Indust., LLC*, 2018 WL 3650015, at *11-12 (S.D.N.Y. Aug. 8, 2018); *Alce*, 2018 WL 1737750, at *10; *Martinez-Leander v. Welnx Life Sciences, Inc*., 2017 WL 2616918, at *8 (C.D. Cal. Mar. 6, 2017); *Bush I*, 2016 WL 5886886, at *3; *Bush v. Mondelez Int'l, Inc*., 2016 WL 7324990, at *2 (N.D. Cal. Dec. 16, 2016) ("*Bush II*"); *Fermin v. Pfizer Inc*., 215 F. Supp. 3d 209, 211-12 (E.D.N.Y. 2016); *Workman v. Plum Inc*., 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015); *Ebner v. Fresh Inc*., 2013 WL 9760035, at *7 (C.D. Cal. Sept. 11, 2013) ("*Ebner I*"), *aff'd* 838 F.3d at 967 (9th Cir. 2016) ("*Ebner II*"); *Gubala v. Allmax Nutrition, Inc*., 2015 WL 6460086, at *5 (N.D. Ill. Oct. 26, 2015); *Gubala v. CVS Pharm., Inc*., 2015 WL 3777627, at *6 (N.D. Ill June 16, 2015); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 759 (N.D. Ill. 2015).[3]

For example, in *Ebner I* the plaintiff alleged that the packaging and metallic weight of defendant's lip balm created the impression that each unit had a larger quantity of product than it actually contained, and was therefore misleading.  2013 WL 9760035, at *7.  In granting the defendant's motion to dismiss the plaintiff's UCL, CLRA, and FAL claims, the district court held that "in light of [the lip balm's] label, *which accurately states the net quantity of product in the tube*, it is not reasonable

---

[3] It is true, as plaintiff alleges in her Complaint (¶ 5), that a few district courts and a couple of state courts – plaintiff identifies five cases in total – have reached contrary holdings on motions to dismiss or demurrers.  However, it is clear that the weight of authority lies on the side of dismissal of such cases pursuant to Rule 12 for failure to state a claim.

to infer that the oversized packaging and metallic weight would mislead reasonable consumers as to the quantity they are receiving." *Id.* (emphasis added) (footnote omitted); *see also id.* at \*8 (product's weight could not "facilitate the perpetration of deception or fraud of the amount of product" given the "accurate label stating the net quantity of product" (internal marks omitted)).  The *Ebner I* court further noted that it could rely on "no cases in which such packaging, *when paired with an accurate net quantity label*, … constituted deceptive marketing practices."  *Id.* at \*7 (emphasis added).  The Ninth Circuit affirmed, holding that the plaintiff had not –and could not – plausibly allege that the lip balm's design and packaging were deceptive.  *Ebner II*, 838 F.3d at 967.  In so holding, the court reasoned that the oversized packaging and the weighty feel of the tube were "commonplace"; therefore, "no reasonable consumer expects the weight or overall size of the packaging to reflect directly the quantity of product contained therein."  *Id.*  Furthermore, "an accurate net weight label is affixed to every [] tube and its accompanying cardboard box."  *Id.*  Therefore, the Ninth Circuit concluded, the district court did not err in dismissing the packaging-based claims.  *Id.*[4]

Similarly, in *Bush I*, the court held that the plaintiff – represented by the same lawyers representing plaintiff here – failed to state a claim of consumer deception based on the packaging of Nabisco cookie and cracker "Go-Paks."  2016 WL 5886886, at \*3.  Following *Ebner II*, the court reasoned that "[o]paque containers with slack-fill at the top are common in the snack market," and that "[n]o reasonable consumer expects the overall size of the packaging to reflect precisely the quantity of product contained therein."  *Id.*  Furthermore, the court reasoned, it was undisputed that the Go-Pak product labels disclosed the net weight and number of cookies or crackers in the containers.  *Id.*  Thus, "any potential ambiguity [regarding the container] could be resolved by the back panel of the products."

---

[4] Plaintiff's counsel has previously sought to rely on FDA guidance "that the presence of an accurate net weight statement does not eliminate the misbranding that occurs when a container is made, formed, or filled so as to be misleading."  *See Bush II*, 2016 WL 7324990, at \*3.  This guidance, however, is not binding authority for purposes of consumer deception claims brought under California consumer protection laws, as "Courts, not the FDA, determine whether a product is misleading under those laws."  *Id.*  Indeed, "[t]hough *Ebner* involved a cosmetic product and 21 C.F.R. § 100.100 governs food products, nothing in the decision suggests that the Ninth Circuit's application of the reasonable consumer test under state consumer protection laws would have been different in the context of food, or that the court was influenced by, or even considered, the existence of any FDA regulations (or the lack thereof)."  *Id.*

*Id.* (quoting *Workman*, 141 F. Supp. 3d at 1035); *accord Bush II*, 2016 WL 7324990, at *2 (plaintiff's "claim that reasonable consumers are likely to be deceived by [Nabisco] Go-Pak product packaging is implausible because Go-Pak product labels disclose the net weight and number of cookies per container and consumers expect there to be some slack-fill in opaque snack containers").

Additionally, in *Daniel v. Tootsie Roll*, the plaintiff challenged the very same 3.5 oz. box of Junior Mints (along with other Junior Mint boxes) that is at issue in this case. The court held that it "can easily conclude, as a matter of law, that the slack-fill enclosed in the Products would not mislead a reasonable consumer, as the Product boxes provide more than adequate information for a consumer to determine the amount of Product contained therein." 2018 WL 3650015, at *11. The court continued:

> First, both the standard (ounces) and metric (grams) weight of the candy enclosed is prominently displayed on the front of each Product box, in large size font and a color differentiated from the package background. [Citations.]
>
> Second, … consumers can easily calculate the number of candies contained in the Product boxes simply by multiplying the serving size by the number of servings in each box, information displayed in the nutritional facts section on the back of each box. [Citations.] …
>
> Third, consumers are not operating on a *table rasa* with respect to their expectations of product fill. To the contrary, "[b]ecause of the widespread nature of this practice, no reasonable consumer expects the weight or overall size of the packaging to reflect directly the quantity of product contained therein." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 967 (9th Cir. 2016). [Citations.]

*Id.* at *12. "The law simply does not provide the level of coddling plaintiffs seek." *Id.* at 13. Accordingly, the court concluded "as a matter of law that no reasonable consumer would be misled by the presence of slack-fill, even assuming it were non-functional, in the Products' packaging." *Id.* at *14.

The analysis from *Ebner* and *Daniel v. Tootsie Roll* applies equally here. Plaintiff cannot show that a reasonable consumer would not have considered the clear and accurate net weight and serving size information on the outside of the Product packaging. Plaintiff does not allege, for example, that she was unable to view the front or back panels of the box. In fact, plaintiff affirmatively admits that the "product label" was one of the things she relied on in making his purchase. *See* Complaint ¶ 9.

Moreover, the presence of empty space in the box could have been determined by handling them – specifically by the sound of the candy rustling inside the box.  Yet plaintiff does not allege that she was prevented from handling the box prior to purchase.  Common sense dictates that she did handle the box while carrying it to the register.  Plaintiff's UCL, FAL, and CLRA claims (and all of his claims that require a showing of deception, reliance, or causation) should be dismissed for this reason alone.

### 3.    Plaintiff Fails to Plead a Violation of Slack-Fill Regulations.

Plaintiff cannot circumvent his failure to plead injury-in-fact or consumer deception by relying on an alleged violation of the federal or California state slack-fill laws – specifically, 21 C.F.R. § 100.100(a) and Cal. Bus. & Prof. Code § 12606.2(c).  *See* Complaint ¶¶ 87, 100, 106.  Under the federal slack-fill regulations, "if a product's packaging does not run afoul of federal law governing food labeling, no state law claim for consumer deception will lie."  *Daniel v. Tootsie Roll*, 2018 WL 3650015, at *4 (citing *Daniel v. Mondelez*, 287 F. Supp. 3d at 187 n.7); *Martin v. Wm. Wrigley Jr. Co*., 2017 WL 4797530, at *2 (W.D. Mo. Oct. 24, 2017); *Bautista v. CytoSport, Inc*., 223 F. Supp. 3d 182, 192 (S.D.N.Y. 2016); I*zquierdo*, 2016 WL 6459832, at *4 (quoting 21 U.S.C. § 343-1(a))).

Here, plaintiff fails to allege facts sufficient to show that the slack fill in the Products is nonfunctional under the rules set out by the applicable federal regulations.  As numerous courts have held, a plaintiff's conclusory allegations that challenged slack fill serves none of the six functions permitted by the FDA and "are not sufficient to state a violation of [21 C.F.R.] § 100.100(a) under either Rule 8 or the heightened standard under Rule 9(b)."  *Benson v. Fannie May Confections Brands, Inc*., 2018 WL 1087639, at *5 (N.D. Ill. Feb. 28, 2018).[5]  For example, in *Bautista*, the plaintiff claimed that the defendant's protein powder package contained 30% slack fill that "was not used to protect product,

---

[5] *See also, e.g., Alce*, 2018 WL 1737750, at *7 (dismissing slack-fill claims where "plaintiffs only offer conclusory allegations, rather than facts, to establish that none of the functional purposes of slack-fill apply"); *Daniel v. Mondelez*, 287 F. Supp. 3d at 187-88 (finding "Plaintiffs' allegations as to the non-applicability of the 'safe harbors' in 21 C.F.R. section 100.100(a)(1)-(6) are quintessential examples of 'bare assertions' insufficient to withstand a motion to dismiss"); *Wuertzburger v. Kentucky Fried Chicken*, 2017 WL 6416296, at *5 (S.D.N.Y. Dec. 13, 2017) (granting motion to dismiss where plaintiff alleged no facts plausibly showing that the alleged slack fill was not functional); *Martinez-Leander*, 2017 WL 2616918, at *7 (conclusory allegations about safe harbors insufficient to state a claim); *Bush II*, 2016 WL 7324990, at *4 (same); *Bush I*, 2016 WL 5886886, at *4 (same).

necessary for enclosing the product, or because of settling." 223 F. Supp. 3d at 190 (internal marks omitted). The court found those conclusory allegations insufficient to state a violation of slack-fill regulations because plaintiff "provides no facts rendering that conclusion plausible." *Id.* Although it "may be challenging for a plaintiff to present such facts before discovery," the court recognized, "the law is clear that the doors of discovery are not unlocked for a plaintiff armed with nothing more than conclusions." *Id.* at 191 (internal marks omitted).

The Complaint here fails for the same reason. Although plaintiff purports to address why the slack fill in the Products did not meet each of the six permitted exceptions, his allegations are bereft of any factual support. *See, e.g.,* Complaint ¶¶ 33-41. Simply adding allegations claiming that a series of conclusory statements were "confirmed" by an undisclosed "expert in packaging design" does not cure the pleading defect.

It is evident, moreover, that the slack fill in the Product packaging served at least three of the purposes expressly permitted by the FDA:

**21 C.F.R. § 100.100(a)(1):**  The FDA allows slack fill to protect the contents of a package and prevent product breakage. 21 C.F.R. § 100.100(a)(1). It is common sense that candy products – especially Junior Mints with their soft center – could be damaged if squished together in a box. This is particularly true during shipping when the boxes are stacked tightly, eliminating any give that might otherwise be present. Slack fill helps prevent such damage and is permitted by federal regulations for this purpose.

Plaintiff alleges that the slack fill "does not protect the contents of the package. In fact, the greater amount of slack-fill, the more room the contents have to bounce around during shipping and handling, making it more likely that the contents will break or sustain damage." Complaint ¶ 33. But this is pure speculation; there are no well-pleaded facts to support plaintiff's conclusion that damage may be caused by slack fill, as opposed to prevented by slack fill.

**21 C.F.R. § 100.100(a)(3):**  The FDA also recognizes that empty space may accommodate the way individual pieces of candy may "settl[e]," which affects how much of the container the candy occupies. 21 C.F.R. § 100.100(a)(3). "Settling" occurs when the shape of the food item leads to varying

amounts of container space being occupied, depending on how the items stack above and beneath one another. The FDA acknowledges that such settling "is a normal, unavoidable process for many types of food." 58 Fed. Reg. 2957-01, 2961.

Here, it is evident that non-uniform-shaped candies such as Junior Mints and Sugar Babies – which are both roughly as wide as the paper box is deep (*see* Complaint ¶ 2 Fig. 3, Fig. 4) – could settle in myriad ways, depending upon whether the box is being held in a rigid sleeve to maintain shape (such as during filling), stacked tightly against other boxes (such as during shipping), or being handled and manipulated (such as during purchase and consumption). This settling could obviously lead to varying amounts of the box being taken up by the candies. In this context, plaintiff's conclusory assertion that "No additional product settling occurs during subsequent shipping and handling" (*id.* ¶ 38) is "illogical and implausible." *Bush II*, 2016 WL 7324990, at *4 (addressing allegations that any slack fill present in challenged products "is not a result of the cookies settling during shipping and handling").

**21 C.F.R. § 100.100(a)(2):** Finally, the FDA allows slack fill to accommodate the requirements of the machines that are used to enclose the contents in the packaging. 21 C.F.R. § 100.100(a)(2). Here, because of the various ways in which the Products may settle during the container-filling process, slack fill is obviously necessary to avoid overfilling the boxes; otherwise, candy pieces could get covered with heated glue, get stuck in the flaps of the packaging, spill into the machinery, or otherwise interfere with the packaging and sealing process.

Plaintiff's assertions that other candy products with less slack fill also use packing machines (Complaint ¶ 63) are no answer to these common-sense inferences. *See, e.g., O'Connor v. Henkel Corp.*, 2015 WL 5922183, at *9 (E.D.N.Y. Sept. 22, 2015) (dismissing food-labeling claims where complaint contained "no well-pleaded factual allegations … permitting this court to reasonably infer that defendants acted intentionally and systematically in under-filling their products"). The fact that other machines used by other manufacturers to package and fill other candy boxes with different candy says nothing about the requirements of the machines used by Tootsie Roll to package and fill the Products at issue here. *Cf. Daniel v. Mondelez*, 287 F. Supp. 3d at 188 ("Plaintiff must avoid a common pitfall – telling rather than showing – and explain to the Court why the candies and their packaging are the same or sufficiently

similar" to alleged comparator products).  Because plaintiff fails to articulate any non-conclusory reasons why the slack fill in the Products did not satisfy at least one of the FDA's six permissible functions, his claims based on allegedly impermissible slack-fill levels should be dismissed.

### 4.  Plaintiff Fails Plausibly to Allege that Tootsie Roll Engaged in "Unfair" Business Practices.

Plaintiff's claim under the "unfair" prong of the UCL fares no better.  As an initial matter, plaintiff's UCL claim (as well as her other claims) fails for all of the reasons already discussed, including plaintiff's failure adequately to plead actual injury.  But plaintiff's UCL claim also fails for the independent reason that she has failed to allege facts sufficient to support her UCL claim under the "unfair" prong.

Plaintiff's UCL claim fails both tests used by California courts to determine whether allegedly anti-consumer conduct is "unfair."  Under the first test used by California courts (the "balancing test"), courts weigh the utility of the defendant's conduct against the gravity of the harm to the consumer. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).  Plaintiff's UCL claim fails that test because, as discussed above, she fails plausibly to allege any consumer deception; thus, she suffered no "harm." *See Bush II*, 2016 WL 7324990, at *4 (holding that plaintiff's "unfair" UCL claim failed the balancing test as a matter of law because plaintiff failed plausibly to allege consumer deception).  On the other hand, Tootsie Roll's use of functional slack-fill is expressly permitted by federal and state law, and is therefore strongly justifiable. *See Davis*, 691 F.3d at 1170-71 (holding that the plaintiff failed to plead facts to show that the defendant engaged in an unfair business practice because "any harm is offset by [the defendant's] strong justification for publishing the advertisement" at issue, where the defendant "justifiably relied on … federal guidance in circulating the advertisements").

Under the second test, courts require that unfairness be "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) (internal marks omitted).  Plaintiff's claim fails this test, too, because she fails adequately to plead any specific statutory violation. *See Hodges v. Apple Inc.*, 2013 WL 4393545, at *6 (N.D. Cal. Aug. 12, 2013) (plaintiff failed to state a UCL claim where he did not say

how defendant's conduct violated the policy at issue).  Plaintiff does not otherwise connect Tootsie
Roll's conduct with a violation of any legislatively declared policy.  To the extent plaintiff intended to
tether her claim to the policy of protecting against consumer deception, it fails for the same reasons that
her claim fails the balancing test.  *See Bush II*, 2016 WL 7324990, at *4 (concluding for same reasons
that plaintiff's "unfair" UCL claim failed this test).

**B.**     **Plaintiff Fails to State a Claim for Breach of Implied Warranty of Merchantability.**

Under California law, in order for the implied warranty of merchantability to be breached, the
product at issue must have been "not fit for ordinary purposes" resulting in injury to plaintiff
proximately caused by the breach of the implied warranty.  *Gutierrez v. Carmax Auto Superstores Cal.*,
19 Cal. App. 5th 1234, 1247 (2019).

Here, plaintiff makes the bizarre claim that Tootsie Roll breached the implied warranty of
merchantability because the Products' packages did not contain an adequate amount of candy for
containers of their size."  Complaint ¶ 193.  That plaintiff was disappointed that she did not get more
candy than the amount listed on the boxes of Junior Mints and Sugar Babies she purchased is not enough
to state a claim for breach of the implied warranty.  Plaintiff has not alleged any facts to show that the
candy she purchased was defective or not fit for consumption.

In addition, for the reasons stated above, plaintiff has failed adequately to allege injury in fact.

Accordingly, plaintiff's claim for breach of the implied warranty of merchantability should be
dismissed.

**C.**     **Plaintiff Fraud-Based Claims Should Be Dismissed.**

In addition to all the reasons stated above (failure adequately to plead injury in fact, failure
adequately to plead consumer deception, failure adequately to plead any unlawful conduct), plaintiff's
fraud -based claims (fraud, UCL, FAL, CLRA) fail because they are not pled with particularity, as
required for such claims pursuant to Rule 9(b).  *See Kearns*, 567 F.3d at 1125 ("[W]e have specifically
ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and
UCL."); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1122–23 (C.D. Cal. 2010) ("District
courts in California have consistently held ... that claims under California's FAL are grounded in fraud

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[and subject to Rule 9(b).]").  Here, plaintiff alleges that a misleading impression is made by the Product packaging, but points to no statements alleged actually to have been false; indeed, the statements on the challenged boxes were all indisputably true.  In addition, plaintiff is unable plausibly to plead reasonable reliance given the clear and accurate weight and serving size disclosures on the challenged boxes.  *See Daniel v. Tootsie Roll*, 2018 WL 3650015, at *15.  Nor are any facts alleged from which a strong inference of scienter (required for plaintiff's fraud claim – *see Collins*, 202 Cal. App. 4th at 259)..

Plaintiff's fraud-based claims should be dismissed for these additional reasons.

### D.    Plaintiff Fails to State a Claim for Unjust Enrichment.

Under California law, the elements of an unjust enrichment claim "are the benefit and the unjust retention of the benefit at the expense of another."  *Peterson v. Celleo Partnership*, 164 Cal. App. 4th 1583, 1594 (2008).  This requires a showing of actual injury by the plaintiff.  *Id.* at 1594-96.

For  the reasons discussed above, plaintiff has failed adequately to plead injury in fact and wrongful or misleading (unjust) conduct on behalf of Tootsie Roll.  Accordingly, plaintiff's claim for unjust enrichment should be dismissed.

### E.    Plaintiff's Claim for Violation of the CLRA Should Be Dismissed for Plaintiff's Failure to Send a Pre-Filing Demand Letter as Required by Statute.

Under the CLRA, thirty days or more prior to the commencement of "an action for damages," the consumer shall notify the defendant of the particular alleged violations of Cal. Civil Code Section 1770, and demand that the defendant correct, repair, replace, or otherwise rectify the goods or services alleged to violate Section 1770.  Cal. Civ. Code § 1782(a)(1).  The notice must be in writing and must be sent by certified or registered mail, return receipt requested.  Cal. Civ. Code § 1782(a)(2).  *See also Keilholtz v. Superior Fireplace Co.*, 2009 WL 839076, at *2 (N.D. Cal. Mar. 30, 2009).

The CLRA's notice requirement is not jurisdictional, but compliance with the requirement is necessary to state a claim.  *Outboard Marine Corp. v. Superior Court,* 52 Cal.App.3d 30, 40-41 (1975).  "[T]he clear intent of the [CLRA] is to provide and facilitate pre-complaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be

accomplished." *Id.* at 41; *Laster v. T-Mobile USA, Inc.,* 407 F.Supp.2d 1181, 1195-96 (S.D.Cal.2005) (describing statutory policy of fostering early settlement of disputes). A "literal application of the notice provisions" is the only way to accomplish the CLRA's purposes. *Outboard Marine,* 52 Cal.App.3d at 41.

Here, plaintiff did not sent the required CLRA notice letter 30 days prior to filing her lawsuit. Rather, as she admits in her Complaint (¶ 174), she "served concurrently with the filing of this complaint a supplemental notice letter." Her attorney previously served CLRA notice letters (on September 6, 2016, and on September 15, 2016 – over three and a half years before filing the complaint in this case) in connection with a different lawsuit involving different claims and a different class period. *See id.* The district court awarded Tootsie Roll judgment in that case in September 2018, over 20 months before plaintiff filed this case.[6] Surely, Tootsie Roll could not have been "on notice" of plaintiff's claims here based on stale notice letters sent in connection with a case that it had already won.

In *Keilholtz,* Judge Wilken was faced with a similar tactic from a plaintiff's lawyer who contended that compliance with the CLRA notice requirements in a previous class action was sufficient for notice in a current lawsuit because the later case involved the same alleged violations of the CLRA and made the same demands. 2009 WL 839076, at *2. Judge Wilken rejected plaintiff's argument, holding that "Plaintiff's failure to give Defendants notice of this particular lawsuit [was] contrary to the spirit and purpose of the CLRA notice requirements." *Id.* Accordingly, the *Keilholtz* plaintiffs' claims for CLRA damages were dismissed.

Here, plaintiff has made no claim for injunctive relief under the CLRA – her only CLRA claim is for damages. Accordingly, plaintiff's CLRA claim should be dismissed for failure to comply with the statutory pre-filing requirements.

---

[6] *See Gordon v. Tootsie Roll Industries, Inc.* (Case No. 2:17-cv-02664, C.D. Cal) *(*Dkt. No. 150), <u>9/26/18 Judgment</u> ("IT IS ORDERED AND ADJUDGED that plaintiff take nothing, that the action be dismissed and that defendant recover its costs of suit ….").

## V.  CONCLUSION

For the foregoing reasons, Tootsie Roll respectfully requests that the Court dismiss plaintiff's Complaint in its entirety pursuant to Rule 12(b)(6).  Given that plaintiff's counsel has been pursuing these same or similar claims in California and elsewhere for over four years (with the only result being continually increasing litigation expenses and drains on judicial resources), Tootsie Roll suggests it is time to dismiss these claims with prejudice.

Dated:  March 10, 2021

DONAHUE FITZGERALD LLP

By:_____/s/ David M. Jolley_____

*Attorneys for Defendant Tootsie Roll Industries, LLC*