**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Bahar Sodaify (SBN 289730)
bsodaify@clarksonlawfirm.com
Zach Chrzan (SBN 329159)
zchrzan@clarksonlawfirm.com
Christina N. Mirzaie (SBN 333274)
cmirzaie@clarksonlawfirm.com
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MAISEL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TOOTSIE ROLL INDUSTRIES, LLC<br><br>Defendant. | Case No.  3:20-cv-05204-SK<br><br>**FIRST AMENDED COMPLAINT FOR RESTITUTION**<br><br>1.  VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et seq*.<br>2.  FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17500, *et seq*.<br>3.  VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et seq.*<br>4.  UNJUST ENRICHMENT<br>5.  COMMON LAW FRAUD<br>6.  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY<br>7.  BREACH OF EXPRESS WARRANTY<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Elizabeth Maisel ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Complaint against Tootsie Roll Industries, LLC ("Tootsie" or "Defendant") in connection with the false, deceptive, unfair, unlawful, and fraudulent packaging, advertising, and labeling of opaque theater box candy products Junior Mints® and Sugar Babies® (the "Products").

1

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

## INTRODUCTION

1.    Tootsie manufactures some of the most popular theater box candy products in the world. To increase profits at the expense of consumers and fair competition, Tootsie participated in a scheme to deceptively sell candy in oversized, opaque boxes that do not reasonably inform consumers that they are half empty. Defendant's "slack-fill" scam dupes unsuspecting consumers across America to pay for empty space at premium prices. *See **Figures 1-4.***

***Figure 1.***

 

 Empty Space (Slack-fill)

Candy

2

FIRST AMENDED COMPLAINT FOR RESTITUTION

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

1   2.     Defendant failed to comply with consumer protection and packaging statutes

2  designed to prevent this scam, and relied on its name and goodwill to further this scam even in

3  the face of other lawsuits against similar companies, including two certified class actions in

4  California against Defendant's competitors for the same violations. This class action aims to

5  remedy Defendant's unfair business practice by making consumers whole for money lost as a

6  result of Defendant's deceptive product packaging.

7  ***Figure 2.***

 

  Empty Space (Slack-fill)

Candy

FIRST AMENDED COMPLAINT FOR RESTITUTION

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

*Figure 3.*



*Figure 4.*



3.     Defendant marketed the Products in a systematically misleading manner by representing them as adequately filled when, in fact, they contained an unlawful amount of empty space or "slack-fill."[1] Defendant underfilled the Products for no lawful reason. The only purpose of this practice was to save money (by not filling the boxes) in order to deceive consumers into purchasing Defendant's Products over its competitors' products. Defendant's slack-fill scheme

---

[1] Following an action by Plaintiff Ketrina Gordon against Defendant in the Central District of California, *Gordon v. Tootsie Roll Industries, Inc*., Case No. 2:17-cv-02664-DSF-MRW (C.D. Cal.), Defendant updated the Products' packaging to address the claims of consumer deception at issue. Plaintiff Gordon discovered on May 2, 2018 that Defendant intended to roll out production of the updated packaging. Specifically, Defendant added to the front of the Products' boxes a prominent depiction of the "actual size" of the candy therein, accompanied by a numerical "piece count" and additional disclaimers regarding, *inter alia*, product settling. Taken together, these packaging modifications eliminated consumer deception caused by Defendant's previous packaging by conspicuously informing consumers of the exact size and number of candy pieces they are buying. In addition, such packaging modifications mirror compliance with the California State Assembly's recent amendments to the applicable slack-fill statute. While such changes provide consumers greater transparency and the ability to make informed choices at the point of purchase before purchasing the Products, they do not address restitutionary relief and money lost by the Class as a result of Defendant's deceptive packaging during the class period.

FIRST AMENDED COMPLAINT FOR RESTITUTION

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

not only harmed thousands of consumers but also harmed their competitors who had implemented labeling changes designed to alert consumers to the true amount of product in each box, long before Defendant did. Accordingly, Tootsie has violated the California Consumers Legal Remedies Act, civil Code § 1750, *et seq.*; California False Advertising Law, Business and Professions Code § 17500, *et seq.*; California Unfair Competition Law, Business and Professions Code § 17200, *et seq.*; was unjustly enriched, has committed common law fraud, breached an express warranty, and the implied warranty of merchantability.

4.     Plaintiff and the Class Members accordingly suffered injury in fact caused by the false, fraudulent, unfair, deceptive, unlawful, and misleading practices set forth herein, and seek restitution only.

## COURTS AROUND THE COUNTRY FIND SLACK-FILL VIOLATIONS MERITORIOUS AND APPROPRIATE FOR CLASS TREATMENT

5.     Several state and federal courts have found that cases involving nearly identical claims are meritorious and appropriate for class treatment. *See Gordon v. Tootsie Roll Industries, Inc.*, Case No. 2:17-cv-02664-DSF-MRW (C.D. Cal.) (defendant's FRCP 12(b)(6) motion to dismiss slack-filled Junior Mints® and Sugar Babies® candy box claims denied); *Iglesias v. Ferrara Candy Co.*, Case No. 3:17-cv-00849-VC (N.D. Cal.) (defendant's FRCP 12(b)(6) motion to dismiss slack-filled Jujyfruits® and Lemonhead® candy box claims denied and nationwide settlement class certified); *Tsuchiyama v. Taste of Nature, Inc.*, Case No. BC651252 (L.A.S.C.) (defendant's motion for judgment on the pleadings involving slack-filled Cookie Dough Bites® candy box claims denied and nationwide settlement subsequently certified through Missouri court); *Escobar v. Just Born, Inc.*, Case No. 2:17-cv-01826-BRO-PJW (C.D. Cal.) (defendant's FRCP 12(b)(6) motion to dismiss slack-filled Mike N' Ike® and Hot Tamales® candy box claims denied and California class action certified); *Thomas v. Nestle USA, Inc.*, Cal. Sup. Case No. BC649863 (certifying as a class action slack-fill claims brought under California consumer protection laws).

///

///

FIRST AMENDED COMPLAINT FOR RESTITUTION

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

**JURISDICTION AND VENUE**

6.      Pursuant to the Court's order (Dkt. 22), this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class Members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

7.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff is a citizen of California, resides in this District, and her purchases of the Product were made in this District. Moreover, Defendant receives substantial compensation from sales in this District, and Defendant made numerous misrepresentations which had a substantial effect in this District, including, but not limited to, labeling, packaging, and internet advertisements, among other advertising.

8.      Defendant is subject to personal jurisdiction in California based upon sufficient minimal contacts which exist between Defendant and California. Defendant is authorized to do and doing business in California.

**PARTIES**

9.      Plaintiff Elizabeth Maisel is an individual residing in California. Plaintiff purchased the Products in Alameda County within the last four (4) years of the filing of this Complaint. Specifically, Plaintiff purchased Junior Mints® and Sugar Babies® at Target in Berkeley, California in early 2018. In making her purchase, Plaintiff relied upon the opaque packaging, including the size of the box and product label, which were prepared and approved by Defendant and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers like Plaintiff to purchase the Products. Plaintiff understood the size of the box and product label to indicate the amount of candy contained therein was commensurate with the size of the box, and she would not have purchased the Product, or would not have paid a price

FIRST AMENDED COMPLAINT FOR RESTITUTION

premium for the Product, had she known that the size of the box and product label were false and misleading.

10.    Tootsie Roll Industries, LLC is a corporation headquartered in Chicago, Illinois. Tootsie Roll maintains its principal place of business at 7401 South Cicero Ave., Chicago, IL, 60629-5885. Defendant, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California. Tootsie Roll is the owner, manufacturer, and distributor of the Products, and is the company that created and/or authorized the false, misleading, and deceptive packaging for the Products.

11.    Plaintiff is informed and believes, and based thereon alleges that at all times relevant herein each of these individuals and/or entities was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, alter ego, or other representative of each of the other Defendant and was acting in such capacity in doing the things herein complained of and alleged.

12.    In committing the wrongful acts alleged herein, Defendant planned and participated in and furthered a common scheme by means of false, misleading, deceptive, and fraudulent representations to induce members of the public to purchase the Products. Defendant participated in the making of such representations in that it did disseminate or cause to be disseminated said misrepresentations.

13.    Defendant, upon becoming involved with the manufacture, advertising, and sale of the Products, knew or should have known that its advertising of the Products' boxes, specifically by representing that they were substantially full, were false, deceptive, and misleading. Defendant affirmatively misrepresented the amount of candy product contained in the Products' boxes in order to convince the public and the Products' consumers users to purchase the Products all to the financial damage and detriment of the Plaintiff and the consuming public.

14.    Defendant created a falsehood that its candy boxes contain an amount of candy commensurate with the size of the box, though they actually contain nonfunctional, unlawful slack-fill. As a result, Defendant's consistent and uniform advertising claims about the Products

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

FIRST AMENDED COMPLAINT FOR RESTITUTION

are false, misleading, and/or likely to deceive in violation of California and federal advertising laws.

15.     In committing the wrongful acts alleged herein, Defendant planned and participated in and furthered a common scheme by means of false, misleading, deceptive, and fraudulent representations to induce members of the public to purchase the Products. Defendant participated in the making of such representations in that each did disseminate or cause to be disseminated said misrepresentations.

16.     Defendant, upon becoming involved with the manufacture, distribution, advertising, labeling, marketing, and sale of the Product, knew or should have known that the claims about the Products and, in particular, the claims suggesting that Products' boxes were substantially full with candy product when they are not, were false, misleading, and deceptive. Defendant affirmatively misrepresented the nature and characteristics of the Products in order to convince the public to purchase and consume the Products, resulting in profits to the detriment of the Plaintiff and consuming public. Thus, in addition to the wrongful conduct herein alleged as giving rise to primary liability, Defendant further aided and abetted and knowingly assisted each other in breach of their respective duties and obligations as herein alleged.

17.     Defendant created a falsehood that their candy boxes contain an amount of candy commensurate with the size of the box, though they actually contain nonfunctional, unlawful slack-fill. As a result, Defendant's consistent and uniform advertising claims about the Products are false, misleading, and/or likely to deceive in violation of California and federal advertising laws.

## **FACTUAL ALLEGATIONS**

18.     The amount of product inside any product packaging is material to any consumer seeking to purchase that product. The average consumer spends only 13 seconds deciding whether to make an in-store purchase,[2] which decision is heavily dependent on a product's packaging, including the front of the packaging and the package dimensions. Research has demonstrated that

---

[2] Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN, Jan. 13, 2015, https://www.nielsen.com/us/en/insights/article/2015/make-the-most-of-your-brands-20-second-window./.

FIRST AMENDED COMPLAINT FOR RESTITUTION

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

packages that seem larger without any meaningful disclosure regarding the amount of product therein are more likely to be purchased.[3]

19.    Accordingly, Defendant chose a certain size box for its Products to convey to consumers that they are receiving a certain and substantial amount of candy commensurate with the size of the box. Such representations constitute an express warranty regarding the Products' contents. Defendant intentionally chose not to include any disclosures that reveal to consumers the amount of candy therein in any meaningful way, such as a piece count accompanied with an "Actual size" depiction, or a fill line.

20.    Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for illegitimate or unlawful reasons.

21.    Defendant falsely represent the quantity of candy in each of the Products' opaque boxes through its packaging. The size of each box leads the reasonable consumer to believe he or she is purchasing a box substantially full of candy product when, in reality, what he or she actually receives is about one-third to one-half less than what is represented by the size of the box. Plaintiff's packaging expert will opine that the Products contain a high degree of nonfunctional slack-fill.

22.    Even if Plaintiff and other reasonable consumers of the Products had a reasonable opportunity to review, prior to the point of sale, other representations of quantity, such as net weight or serving disclosures, they did not and would not have reasonably understood or expected such representations to translate to a quantity of candy product meaningfully different from their expectation of a quantity of candy product commensurate with the size of the box.

23.    Since the average consumer spends only 13 seconds deciding whether to make an in-store purchase,[4] which decision is heavily dependent on a product's packaging, including the

---

[3] P. Raghubir & A. Krishna, *Vital Dimensions in Volume Perception: Can the Eye Fool the Stomach?*, 36 J. MARKETING RESEARCH 313-326 (1999).

[4] Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN, Jan. 13, 2015, https://www.nielsen.com/us/en/insights/article/2015/make-the-most-of-your-brands-20-second-windown./.

FIRST AMENDED COMPLAINT FOR RESTITUTION

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

front of the packaging and the package dimensions, disclosures on the back of the Products' packaging, like "Product sold by weight not volume" and nutrition facts, do not inform or provide Plaintiff or other reasonable consumers any meaningful conclusions about the quantity of candy product contained in the Products' boxes that were different than Plaintiff's expectations that the quantity of candy product would be commensurate with the size of the box.

24.    Plaintiff's economic experts conducted a randomized conjoint experiment, which confirmed that nearly 90% of candy consumers overestimate the amount of candy contained in the Products.  This is true even for repeat purchasers of the Products. This survey also shows that size of the Products' packaging has a significant impact on a consumer's choice to purchase the Products.

25.    Plaintiff and the Class have suffered injury in fact and lost money as a result of Defendant's false, deceptive, and misleading representations. Plaintiff's economics experts will opine that based on their large-scale, randomized conjoint consumer study, fill level and box size have a causal impact on consumers' willingness to pay for the Products.

26.    Plaintiff's experts were able to calculate the price premia attributable to the slack-fill contained in each one of the Products' packaging, thereby quantifying the actual harm suffered by Plaintiff and the class. They will opine that the price premium for Juniors Mints was 26.0% while the price premium for Sugar Babies was 21.5% for the retail sales channel. For the movie theater sales channel, the price premia for Junior Mints and Sugar Babies was 16.4% and 13.4%, respectively.

27.    Prior to the point of sale, the Products' packaging does not allow for a visual or audial confirmation of the contents of the Products. The Products' opaque packaging prevents a consumer from observing the contents before opening. Even if Plaintiff and other reasonable consumers were to "shake" the Products before opening the box, they would not be able to discern the presence of any nonfunctional slack-fill, let alone the one-third to one-half nonfunctional slack-fill that is present in the Products.

28.    The other information that Defendant provides about the quantity of candy product on the front and back labels of the Products does not Plaintiff and other reasonable consumers to

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

10

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

form any meaningful understanding about how to gauge the quantity of contents of the Products as compared to the size of the box itself. For instance, the front of the Products' packaging does not have any labels that would provide Plaintiff with any meaningful insight as to the amount of candy to be expected, such as a fill line, actual size depiction accompanied by the words "actual size," and a numerical piece.

29.    Disclosures of net weight and serving sizes in ounces or grams do not allow reasonable consumers, like Plaintiff, to make any meaningful conclusions about the quantity of candy contained in the Products' boxes that would be different from the reasonable consumer's expectation that the quantity of candy product is commensurate with the size of the box. Plaintiff's randomized conjoint survey *confirmed* the net weight disclosures on the Products do not give consumers an accurate expectation regarding product fill level.

30.    The net weight and serving size disclosures does not allow Plaintiff to make – and Plaintiff did not make – any meaningful conclusions about the quantity of candy product contained in the Products' boxes that were different than Plaintiffs' expectations that the quantity of candy product would be commensurate with the size of the box.

31.    Moreover, the top of the Products' boxes clearly indicate that they will open outward when unsealed. This specific design leads the reasonable consumer to believe that the package does not require any empty space to account for the opening of the box, such as with a perforated tab whose intended use might be to dispense the candy product. *See Figures 5-6.* **Figure 5.**



///

///

FIRST AMENDED COMPLAINT FOR RESTITUTION

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

*Figure 6.*



32.     If Plaintiff knew that the Product contained slack-fill for no functional or lawful purpose, then she would not have purchased the Product or would have paid substantially less. Indeed, according to Plaintiff's economics experts, the inclusion of slack-fill in the Products generates a price premium attributable to slack-fill that is embedded in the price of the Products that Plaintiff and all class members have paid.

33.     As pictured *supra*, Defendant uniformly underfills the Products' boxes, rendering about half of each box slack-fill, none of which serves a functional or lawful purpose.

34.     As confirmed during Plaintiff's investigation, including consultation of experts in packaging design, the slack-fill contained in the Products' packaging does not protect the contents of the packages. In fact, the greater the amount of slack-fill, the more room the contents have to bounce around during shipping and handling, making it more likely that the contents will break or sustain damage. Plaintiff shall proffer expert testimony to establish these facts once this case reaches the merits.

35.     If, on the other hand, the amount of candy product contained in each box was commensurate with the size of the box, as reasonable consumers expect, then the candy product would have less room to move around during shipping and handling, and would be less likely to sustain damage.

36.     The Products are packaged in boxes and sealed with heated glue. A true and correct representation of the heated glue on the Products' packaging is shown in the image below.

///

///

12

FIRST AMENDED COMPLAINT FOR RESTITUTION

*Figure 7.*



37. As confirmed by Plaintiff's expert in packaging design, the equipment used to seal the box does not breach the inside of the Products' containers during the packaging process. The heated glue is applied to an exterior flap of the box, which is then sealed over the top by a second exterior flap.

38. As confirmed during Plaintiff's survey of comparator boxed candy products available in the marketplace, neither the heated glue application nor the sealing equipment requires slack-fill during the manufacturing process. Even if there were no slack-fill present in the Products' boxes, the machines used for enclosing the contents in the package would work without disturbing the packaging process.

39. As confirmed by Plaintiff's expert in packaging design, the slack-fill present in the Products' containers is not a result of the candy product settling during shipping and handling. Given the Products' density, shape, and composition, any settling occurs immediately at the point of filling the box. No additional product settling occurs during subsequent shipping and handling.

40. The contents of the Products are of a great enough density that any slack-fill present at the point of sale was present at the time of filling the containers and packaging the contents.

41. As confirmed by Plaintiff's expert in packaging design, the Products' packaging is not reusable or of any significant value to the Products independent of its function to hold the candy product. The Products' containers are boxes intended to be discarded immediately after the candy is eaten.

///

FIRST AMENDED COMPLAINT FOR RESTITUTION

42.     As confirmed by Plaintiff's expert in packaging design, the slack-fill present in the Products' containers does not accommodate required labeling, discourage pilfering, facilitate handling, or prevent tampering.

43.     Defendant can easily increase the quantity of candy product contained in each box (or, alternatively, decrease the size of the containers) by 33-50% more volume. The "Nutrition Facts" panel on the back of each box states servings of 2.5 and 4.5 servings per container for Junior Mints® and Sugar Babies®, respectively. By arithmetic, each serving would be equal to 100% expected total fill, divided by 2.5 servings for Junior Mints® and divided by 4.5 servings for Sugar Babies®, yielding a value of 40% of volume per serving for Junior Mints® and 22.2% of volume per serving for Sugar Babies®. Given the Products can accommodate an additional 33-50% of candy product, consumers are being shortchanged roughly 1.5 and 2.5 servings per box. True and accurate representations of the Products' net weight and serving size disclosures are set forth below.

**_Figure 8._**





44.     Contrast Defendant's packaging of the Products with a comparator product, such as "Junior Mints XL" ("XL") (pictured below), another candy product manufactured by Defendant

14

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

1    itself and similarly sold at retail outlets and movie theaters throughout California. A true and

2    correct representation of the front of XL is shown below.

3    **_Figure 9._**



10    45.    XL is sold in identical packaging to that of the Products, i.e., opaque boxes of

11    identical size, physical dimensions, shape, and material.

12    46.    XL is packaged using identical fill and heated glue enclosing machines to those of

13    the Products.

14    47.    XL contains identical candy—identical size, shape, and density—as that of the

15    Products.

16    48.    However, contrary to the Products, XL contains more candy product. The Products'

17    packaging contains 40 pieces of candy, yielding 33-50% nonfunctional slack-fill. In contrast, XL,

18    which has the exact same packaging, contains 47 pieces of candy, yielding 33% nonfunctional

19    slack-fill. In other words, the two products within the line of Products at issue have the exact same

20    packaging and candy product, and the only difference is the amount of candy product contained

21    therein.

22    49.    The Products both have serving sizes of 16 pieces of the same candy. Yet, XL

23    contains a greater number of total servings. A true and correct presentation of the nutritional panel

24    of XL, which reports its serving size and total servings per container, is set forth below.

25    ///

26    ///

27    ///

28    ///

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

FIRST AMENDED COMPLAINT FOR RESTITUTION

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

*Figure 10.*



50.    The packaging of XL evidences that Defendant is clearly capable of increasing the amount of candy product contained in "regular" Junior Mints®, as demonstrated by the packaging and sale of the "XL" version.

51.    XL's packaging evidences that the slack-fill present in the Products is nonfunctional.

52.    XL's packaging evidences that the slack-fill present in the Products, and at a minimum in the "regular" version of the Products, is not necessary to protect and in fact does not protect the contents of the Products.

53.    XL's packaging evidences that the slack-fill present in the Products, and at a minimum in the "regular" version of the Products, is not a requirement of the machines used for enclosing the contents of the Products.

54.    XL's packaging evidences that the slack-fill present in the Products, and at a minimum in the "regular" version of the Products, is not a result of unavoidable product settling during shipping and handling

55.    XL's packaging evidences that the slack-fill present in the Products, and at a minimum in the "regular" version of the Products, is not needed to perform a specific function.

56.    XL's packaging evidences that the slack-fill present in the Products, and at a minimum in the "regular" version of the Products, is not part of a legitimate reusable container.

///

///

16

FIRST AMENDED COMPLAINT FOR RESTITUTION

57.     In short, by including more candy product in the exact same box, and then reporting a higher number of total servings, Defendant itself admits that the Products contain nonfunctional slack-fill.

58.     XL's packaging evidences that the slack-fill present in the Products, and at a minimum in the "regular" version of the Products, is able to further increase the level of fill in the Products. XL's packaging evidences that Defendant has reasonable alternative designs available to package its Products.

59.     Further contrast Defendant's packaging of the Products with a comparator product such as "Boston Baked Beans" ("Boston Beans"), a candy product manufactured by Ferrara Candy Company, and similarly sold at movie theaters and retail outlets located throughout New Jersey and the United States. A true and correct representation of the front of the Boston Beans product is shown in the image below.

**_Figure 11._**



60.     Boston Beans are sold in identical packaging to that of the Products, i.e., opaque boxes of identical size, shape, volume, and material. Boston Beans are packaged using nearly identical fill and heated glue enclosing machines to those of the Products.

61.     Boston Beans are coated candies of nearly identical size, shape, and density of that of the Products. However, contrary to the Products, Boston Beans have very little slack-fill and negligible nonfunctional slack-fill. A true and correct representation of the open container of Boston Beans is pictured in the image below.

FIRST AMENDED COMPLAINT FOR RESTITUTION

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

*Figure 12.*



62.     Boston Beans' packaging provides additional evidence that the slack-fill present in the Products' packaging is nonfunctional to the tune of 33-50%.

63.     Boston Beans' packaging provides additional evidence that the slack-fill in the Products is not necessary to protect and, in fact, does not protect, the contents of the Products; is not a requirement of the machines used for enclosing the contents of the Products; is not a result of unavoidable product settling during shipping and handling; is not needed to perform a specific function; and is not part of a legitimate reusable container.

64.     Boston Beans' packaging provides additional evidence that Defendant is able to increase the level of fill inside the Products' boxes.

65.     Boston Beans' packaging provides more evidence that Defendant has reasonable alternative designs available to it in its packaging of the Products.

66.     Plaintiff did not expect that the Products would contain nonfunctional slack-fill, especially given that nonfunctional slack-fill, as opposed to functional slack-fill, is prohibited by federal law as well as California law.

67.     The Products are made, formed, and filled so as to be misleading. The Products are, therefore, misbranded.

68.     The slack-fill contained in the Products does not serve a legitimate or lawful purpose.

69.     Defendant's false, deceptive, and misleading label statements are unlawful under state and federal consumer protection and packaging laws.

18

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

70. Defendant intended for Plaintiff and the Class Members to be misled.

71. Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the Class.

72. Further contrast Defendant's packaging of the Products with a comparator product of one of Defendant's competitors, such as "Boston Baked Beans" ("Boston Beans"), a candy product manufactured by Ferrara Candy Company, and similarly sold at movie theaters and retail outlets located throughout California and the United States. A true and correct representation of the front of the Boston Beans product is shown in the image below.

**_Figure 13._**



73. Boston Beans are sold in identical packaging to that of the Products, i.e., opaque boxes of identical size, shape, volume, and material. Boston Beans are packaged using nearly identical fill and heated glue enclosing machines to those of the Products.

74. Boston Beans are coated candies of nearly identical size, shape, and density of that of the Products. However, contrary to the Products, Boston Beans have very little slack-fill and negligible nonfunctional slack-fill. A true and correct representation of the open container of Boston Beans is pictured in the image below.

///

///

///

///

///

FIRST AMENDED COMPLAINT FOR RESTITUTION

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

_**Figure 14.**_



75.     Boston Beans' packaging provides additional evidence that the slack-fill present in the Products' packaging is nonfunctional to the tune of 33-50%.

76.     Boston Beans' packaging provides additional evidence that the slack-fill in the Products is not necessary to protect and, in fact, does not protect, the contents of the Products; is not a requirement of the machines used for enclosing the contents of the Products; is not a result of unavoidable product settling during shipping and handling; is not needed to perform a specific function; and is not part of a legitimate reusable container.

77.     Boston Beans' packaging provides additional evidence that Defendant is able to increase the level of fill inside the Products' boxes.

78.     Boston Beans' packaging provides more evidence that Defendant has reasonable alternative designs available to it in its packaging of the Products.

79.     Plaintiff did not expect that the Products would contain nonfunctional slack-fill, especially given that nonfunctional slack-fill, as opposed to functional slack-fill, is prohibited by federal law as well as California law.

80.     The Products are made, formed, and filled so as to be misleading. The Products are, therefore, misbranded.

81.     The slack-fill contained in the Products does not serve a legitimate or lawful purpose.

82.     Defendant's false, deceptive, and misleading label statements are unlawful under state and federal consumer protection and packaging laws.

FIRST AMENDED COMPLAINT FOR RESTITUTION

83.    Defendant intended for Plaintiff and the Class members to be misled.

84.    Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the Class.

## CLASS ACTION ALLEGATIONS

85.    Plaintiff brings this action on her own behalf and on behalf of all other persons similarly situated.  The Class which Plaintiff seeks to represent comprises:

> "All persons who purchased the Products in California, for personal consumption and not for resale during the time period May 29, 2016 to May 2, 2018."

Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

86.    The Class is comprised of thousands of consumers throughout the State of California. The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

87.    There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented in that the Class was exposed to the same common and uniform false and misleading advertising and omissions. The questions of law and fact common to the Class predominate over questions which may affect individual Class members.  Common questions of law and fact include, but are not limited to, the following:

a.    Whether Defendant's conduct constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code Section 1750, *et seq*.;

b.    Whether Defendant misrepresented the approval of the FDA, United States Congress, and California Legislature that the Products' packaging complied with federal and California slack-fill regulations and statutes in violation of Civil Code Section 1750, *et seq*.;

c.    Whether Defendant used deceptive representations in connection with the sale of the Products in violation of Civil Code Section 1750, *et seq*.;

FIRST AMENDED COMPLAINT FOR RESTITUTION

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

d.  Whether Defendant represented the Products have characteristics or quantities that they do not have in violation of Civil Code Section 1750, *et seq.*;

e.  Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code Section 1750, *et seq.*;

f.  Whether Defendant represented that the Products have been supplied in accordance with a previous representation of quantity of candy product contained therein by way of their packaging when they have not, in violation of Civil Code Section 1750, *et seq.*;

g.  Whether Defendant's packaging is untrue or misleading in violation of Business and Professions Code Section 17500, *et seq.*;

h.  Whether Defendant knew or by the exercise of reasonable care should have known its packaging was and is untrue or misleading in violation of Business and Professions Code Section 17500, *et seq.*;

i.  Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

j.  Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

k.  Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

l.  Whether Defendant's packaging is false or misleading and therefore misbranded in violation of California Health and Safety Code sections 110660, 110665, or 110670;

m.  Whether the Products contain nonfunctional slack-fill in violation of 21 C.F.R. Section 100.100, *et seq.*;

n.  Whether the Products contain nonfunctional slack-fill in violation of California Business and Professions Code Section 12606.2, *et seq.*;

o.  Whether Plaintiff and the Class paid more money for the Products than they actually received; and

FIRST AMENDED COMPLAINT FOR RESTITUTION

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

    p.   How much money Plaintiff and the Class paid for the Products than they actually received.

    q.   Whether Defendant was unjustly enriched at the expense of Plaintiff and the Class members;

    r.   Whether Defendant breached an express warranty to Plaintiff and the Class members;

    s.   Whether Defendant committed common law fraud; and

    t.   Whether Defendant breached an implied warranty to Plaintiff and Class members.

88.    Plaintiff's claims are typical of the claims of the proposed Class, as the representations and omissions made by Defendant are uniform and consistent and are contained in advertisements and on packaging that was seen and relied on by Plaintiff and members of the Class.

89.    Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

90.    Plaintiff and the Class have suffered injury in fact and lost money as a result of Defendant's false, deceptive, and misleading representations.

91.    Plaintiff would not have purchased the Products but for the representations by Defendant about the amount of candy product contained in the Products' packages.

92.    The Class is identifiable and readily ascertainable. Notice can be provided to such purchasers using techniques and a form of notice similar to those customarily used in class actions, and by Internet publication, radio, newspapers, and magazines.

93.    A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed members of the Class to prosecute their claims individually.

94.    The trial and the litigation of Plaintiff's claims are manageable.

///

FIRST AMENDED COMPLAINT FOR RESTITUTION

95.     Defendant has acted on grounds generally applicable to the entire Class, thereby making final declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual member of the Class that would establish incompatible standards of conduct for Defendant.

96.     Absent a class action, Defendant will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class members will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

## **FIRST CAUSE OF ACTION:**

## **VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**

## **BUSINESS & PROFESSIONS CODE § 17200,** *et seq***.**

### **(By Plaintiff against Defendant)**

97.     Plaintiff repeats and realleges all allegations of the previous paragraphs, and incorporates the same as if set forth herein at length.

98.     Plaintiff brings this cause of action pursuant to Business and Professions Code Section 17200, *et seq*., on her own behalf and on behalf of all other persons similarly situated. Plaintiff seeks to represent a Class consisting of "All persons who purchased the Products in the State of California for personal use and not for resale during the time period May 29, 2016 through May 2, 2018. Excluded from the Class are Defendant's officers, directors, and employees, and any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the Products."

99.     Congress passed the Federal Food, Drug, and Cosmetic Act ("FDCA"), and in so doing established the Federal Food and Drug Administration ("FDA") to "promote the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393.

100.     The FDA has implemented regulations to achieve this objective. *See, e.g*., 21 C.F.R.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

§ 101.1 *et seq.*

101.    The FDA enforces the FDCA and accompanying regulations; "[t]here is no private right of action under the FDCA." *Ivie v. Kraft Foods Global, Inc.*, 2013 U.S. Dist. LEXIS 25615, 2013 WL 685372, at *1 (internal citations omitted).

102.    In 1990, Congress passed an amendment to the FDCA, the Nutrition Labeling and Education Act ("NLEA"), which imposed a number of requirements specifically governing food nutritional content labeling. *See, e.g.*, *21 U.S.C. § 343 et. seq.*

103.    Plaintiff is not suing under the FDCA, but under California state law.

104.    The California Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), Cal. Health & Safety Code § 109875 *et seq.*, has adopted wholesale the food labeling requirements of the FDCA and NLEA as the food regulations of California. Cal. Health & Safety Code § 110100.

105.    The Sherman Law declares any food to be misbranded if it is false or misleading in any particular, if the labeling does not conform to the requirements for nutrition labeling set forth in certain provisions of the NLEA. Cal. Health & Safety Code §§ 110660, 110665, 110670.

106.    According to California Business and Professions Code Section 12606.2:

(a) This section applies to food containers subject to Section 403(d) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. Sec. 343(d)), and Section 100.100 of Title 21 of the Code of Federal Regulations. Section 12606 does not apply to food containers subject to this section.

(b) No food containers shall be made, formed, or filled as to be misleading.

(c) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill. Slack fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack fill is the empty space in a package that is filled to substantially less than its capacity for reasons other than any one or more of the following:

(1) Protection of the contents of the package.

(2) The requirements of the machines used for enclosing the contents in the package.

(3) Unavoidable product settling during shipping and handling.

(4) The need for the package to perform a specific function, such as where packaging plays a role in the preparation or consumption of a food, if that function is inherent to the nature of the food and is clearly communicated to consumers.

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value that is both significant in

proportion to the value of the product and independent of its function to hold the food, such as a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed or durable commemorative or promotional packages.

(6) Inability to increase the level of fill or to further reduce the size of the package, such as where some minimum package size is necessary to accommodate required food labeling exclusive of any vignettes or other nonmandatory designs or label information, discourage pilfering, facilitate handling, or accommodate tamper-resistant devices.

(d) Slack fill in a package shall not be used as grounds to allege a violation of this section based solely on its presence unless it is nonfunctional slack fill.

(e) This section shall be interpreted consistent with the comments by the United States Food and Drug Administration on the regulations contained in Section 100.100 of Title 21 of the Code of Federal Regulations, interpreting Section 403(d) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. Sec. 343(d)), as those comments are reported on pages 64123 to 64137, inclusive, of Volume 58 of the Federal Register.

(f) If the requirements of this section do not impose the same requirements as are imposed by Section 403(d) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. Sec. 343(d)), or any regulation promulgated pursuant thereto, then this section is not operative to the extent that it is not identical to the federal requirements, and for this purpose those federal requirements are incorporated into this section and shall apply as if they were set forth in this section.

(g) Any sealer may seize any container that is in violation of this section and the contents of the container. By order of the superior court of the county within which a violation of this section occurs, the containers seized shall be condemned and destroyed or released upon any conditions that the court may impose to ensure against their use in violation of this chapter. The contents of any condemned container shall be returned to the owner thereof if the owner furnishes proper facilities for the return. A proceeding under this section is a limited civil case if the value of the property in controversy is less than or equal to the maximum amount in controversy for a limited civil case under Section 85 of the Code of Civil Procedure.

107.     The UCL prohibits "any unlawful, unfair... or fraudulent business act or practice." Cal. Bus & Prof. Code § 17200.

### A.     "Unfair" Prong

108.     Under California's False Advertising Law, Cal. Bus. & Prof. Code Section 17200, *et seq*., a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

109.     Defendant's action of leaving 33-50% nonfunctional slack-fill in its Products does not confer any benefit to consumers.

110.     Defendant's action of leaving 33-50% nonfunctional slack-fill in its Products causes injuries to consumers, who do not receive a quantity of candy commensurate with their reasonable expectations.

111.    Defendant's action of leaving 33-50% nonfunctional slack-fill in its Products causes injuries to consumers, who do not receive a level of hunger satiety commensurate with their reasonable expectations.

112.    Defendant's action of leaving 33-50% nonfunctional slack-fill in its Products causes injuries to consumers, who end up overpaying for the Products and receiving a quantity of candy less than what they expected to receive based on Defendant's representations.

113.    Consumers cannot avoid any of the injuries caused by the 33-50% nonfunctional slack-fill in Defendant's Products.

114.    Accordingly, the injuries caused by Defendant's activity of including 33-50% nonfunctional slack-fill in the Products outweigh any benefits.

115.    Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

116.    Here, Defendant's conduct of including 33-50% nonfunctional slack-fill in the Products' packaging has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of its harm.

117.    Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

118.    The California legislature maintains a declared policy of prohibiting nonfunctional slack-fill in consumer goods, as reflected in California Health and Safety Code Section 110100.

119.    The 33-50% of nonfunctional slack-fill contained in the Products is tethered to a legislative policy declared in California according to Cal. Health & Safety Code Section 110100.

120.    Defendant's packaging of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

121.    Defendant knew or should have known of its unfair conduct.

122.    As alleged in the preceding paragraphs, the misrepresentations by Defendant

27

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

detailed above constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

123.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have used packaging appropriate for the amount of candy product contained within the Products, increased the amount of candy product contained therein, and/or include informative disclaimers on the front of the packaging that would inform consumers as to the amount of candy in the Product packaging, such as a fill line or actual size depiction with a piece count.

124.    All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

125.    Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court awarding Plaintiff restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial.

126.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff paid an unwarranted premium for these products. Plaintiff paid for 33-50% of candy product she never received. Specifically, the price premium for Junior Mints was 26.0% while the price premium for Sugar Babies was 21.5% for the retail sales channel. For the movie theater sales channel, the price premia for Junior Mints and Sugar Babies was 16.4% and 13.4%, respectively. Plaintiff would not have purchased the Products if she had known that the Products' packaging contained nonfunctional slack-fill.

### B.    "Fraudulent" Prong

127.    California Business and Professions Code Section 17200, *et seq.,* considers conduct fraudulent and therefore prohibits said conduct if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

128.    Members of the public base their purchasing decisions on the dimensions of a product's packaging. They generally do not view back label information or net weight and serving

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

disclosures. And even if they do, such disclosures do not provide consumers with meaningful information as to the amount of Product in the packaging as compared to the size of the packaging. Members of the public choose a larger box because they automatically assume it has better value.

129.    Defendant's conduct of packaging the Products with 33-50% nonfunctional slack-fill is likely to deceive members of the public.

130.    Defendant's packaging of the Product, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes fraudulent conduct.

131.    Defendant knew or should have known of its fraudulent conduct.

132.    As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

133.    There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein. Defendant could have used packaging and labeling appropriate for the amount of Product contained therein.

134.    All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

135.    Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court awarding Plaintiff restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial.

136.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted premium for these products. Specifically, Plaintiff paid for 33-50% of candy product she never received. Plaintiff would not have purchased the Products if she had known that the Products' boxes contained nonfunctional slack-fill.

///

FIRST AMENDED COMPLAINT FOR RESTITUTION

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

### C.    "Unlawful" Prong

137.    California Business and Professions Code Section 17200, *et seq.,* identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

138.    Defendant's packaging of the Products, as alleged in the preceding paragraphs, violates California Civil Code Section 1750, *et. seq.,* California Business and Professions Code Section 17500, *et. seq.,* California's Sherman Law, the FDCA, 21 C.F.R §100.100, and California Business and Professions Code Section 12602.2.

139.    Defendant's packaging of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct.

140.    Defendant's packaging is *per se* misleading.

141.    Defendant knew or should have known of its unlawful conduct.

142.    As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code Section 17200.

143.    As a result of the business acts and practices described above, Plaintiff and members of the Class, pursuant to Section 17203, are entitled to orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

    a.    Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

        (1) The applicable limitations period is four years for claims brought under the UCL, which is one year longer than the applicable statute of limitations under the FAL and CLRA. Thus, class members who purchased the Products between 3 and 4 years prior to the filing of the complaint will be barred from the Class if equitable relief were not granted under the UCL.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

(2) The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein to include, for example, the overall unfair marketing scheme of underfilling the Products' packaging. Thus, Plaintiff and class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

144.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have used packaging appropriate for the amount of candy product contained within the Products, increased the amount of candy product contained therein, and/or include informative disclaimers on the front of the packaging that would inform consumers as to the amount of candy in the Product packaging, such as a fill line or actual size depiction with a piece count.

145.    All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

146.    Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court awarding Plaintiff restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial.

147.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff paid an unwarranted premium for these products. Plaintiff paid for 33-50% candy product she never received. Plaintiff would not have purchased the Products if she had known that the Products' boxes contained nonfunctional slack-fill.

///

///

FIRST AMENDED COMPLAINT FOR RESTITUTION

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

## SECOND CAUSE OF ACTION:

## FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS &

## PROFESSIONS CODE § 17500, *et seq.*

### (By Plaintiff against Defendant)

148.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

149.   This cause of action is brought pursuant to Business and Professions Code Section 17500, *et seq.*, on behalf of Plaintiff and the Class consisting of all persons residing in the State of California who purchased the Product for personal consumption and not for resale during the time period of May 29, 2016 through May 2, 2018.

150.   California's False Advertising Law, California Business and Professions Code Section 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

151.   As a direct and proximate result of Defendant's conduct alleged herein in violation of the FAL, Plaintiff and members of the Class, pursuant to Section 17535, are entitled to equitable relief as no adequate remedy at law exists.

152.   The scope of permissible plaintiffs under the FAL is broader than the CLRA to include, for example, individuals or entities who purchased the Products for non-personal, non-family, and non-household purposes. Thus, Plaintiff and class members may be entitled to restitution under the FAL, while not entitled to damages under the CLRA.

153.   Defendant knowingly manipulated the physical dimensions of the Products' boxes, or stated another way, under-filled the amount of candy product in each of the Products' boxes, by including 33-50% nonfunctional slack-fill as a means to mislead the public about the amount of candy product contained in each package.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

154.    Defendant controlled the packaging of the Products. It knew or should have known, through the exercise of reasonable care, that its representations about the quantity of candy product contained in the Products were untrue and misleading.

155.    The general public bases its purchasing decisions on the dimensions of a product's packaging. Consumers generally do not look at any label information, such as net weight or serving disclosures. Instead, the general public chooses a larger box because it leads them to believe they are receiving a better value.

156.    Defendant's conduct of underfilling the Products' boxes by 33-50% instead of including more candy product in the boxes or packaging the candy product in smaller boxes is likely deceive the general public.

157.    Defendant's actions in violation of Section 17500 were false and misleading such that the general public is and was likely to be deceived.

158.    Pursuant to Business and Professions Code Sections 17535, Plaintiff and the Class seek an order of this Court awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial.

159.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiff purchased the Products in reliance upon the claims by Defendant that the Products were of the quantity represented by Defendant's packaging and advertising. Plaintiff would not have purchased the Products if she had known that the claims and advertising as described herein were false.

## THIRD CAUSE OF ACTION:

## VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT,

## CALIFORNIA CIVIL CODE § 1750, *et seq.*

### (By Plaintiff against Defendant)

160.    Plaintiff repeats and realleges all allegations of the previous paragraphs, and incorporates the same as if set forth herein at length.

161.    Plaintiff brings this cause of action pursuant to Civil Code Section 1750, *et seq.*, the

33

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

Consumers Legal Remedies Act ("CLRA"), on her own behalf and on behalf of all other persons similarly situated. Plaintiff seeks to represent a Class consisting of "All persons who purchased the Products in the State of California for personal use and not for resale during the time period May 29, 2016, through May 2, 2018. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Product."

162.    The Class consists of thousands of persons, the joinder of whom is impracticable.

163.    There are questions of law and fact common to the Class, which questions are substantially similar and predominate over questions affecting the individual Class members, including but not limited to those questions listed hereinabove.

164.    The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with a sale of goods.

165.    Plaintiff respectfully requests that, pursuant to Section 1780(a)(2), the Court should compel Defendant to provide restitution and damages to consumers who paid for Products that are not what they expected to receive due to Defendant's misrepresentations. Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

166.    The practices described herein, specifically Defendant's packaging, advertising, and sale of the Products, were intended to result in the sale of the Products to the consuming public and violated and continue to violate the CLRA by (1) misrepresenting the approval of the Products as compliant with 21 C.F.R Section 100.100, California Business and Professions Code Section 12606.2,  and the Sherman Law; (2) using deceptive representations in connection with the Products; (3) representing the Products have characteristics and quantities that they do not have; (4) advertising and packaging the Products with intent not to sell them as advertised and packaged; and (5) representing that the Products have been supplied in accordance with a previous representation as to the quantity of candy product contained within each box, when it has not.

167.    Defendant fraudulently deceived Plaintiff and the Class by representing that the Products' packaging, which includes 33-50% nonfunctional slack-fill, actually conforms with federal and California slack-fill regulations and statutes including the 21 C.F.R. Section 100.100,

California Business and Professions Code Section 12606.2, and the Sherman Law.

168.    Defendant packaged the Products in boxes that contain 33-50% nonfunctional slack-fill by making material misrepresentations to fraudulently deceive Plaintiff and the Class.

169.    Defendant fraudulently deceived Plaintiff and the Class by misrepresenting the Products as having characteristics and quantities which they do not have, e.g., that the Products are free of nonfunctional slack-fill when they are not. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

170.    Defendant fraudulently deceived Plaintiff and the Class by packaging and advertising the Products with intent not to sell them as advertised, by intentionally under-filling the Products' containers and instead replacing candy product with nonfunctional slack-fill. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

171.    Defendant fraudulently deceived Plaintiff and the Class by representing that the Products were supplied in accordance with an accurate representation as to the quantity of candy product contained therein when they were not. Defendant presented the physical dimensions of the Products' packaging to Plaintiff and the Class before the point of purchase and gave Plaintiff and the Class a reasonable expectation that the quantity of candy product contained therein was commensurate with the size of packaging. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

172.    Defendant knew or should have known, through the exercise of reasonable care, that the Products' packaging was misleading.

173.    Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights, and Defendant was wanton and malicious in its concealment of the same.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

174.    Defendant's Product packaging was a material factor in Plaintiff's and the Class's decision to purchase the Products. Based on Defendant's Products' packaging, Plaintiff and the Class reasonably believed that they were getting more candy product than they actually received. Had they known the truth of the matter, Plaintiff and the Class would not have purchased the Products.

175.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair, unlawful, and fraudulent conduct. Specifically, Plaintiff paid for candy product she never received. Plaintiff would not have purchased the Products had she known the boxes contained nonfunctional slack-fill.

176.    In addition, Defendant should be compelled to provide restitution damages to consumers who paid for candy products they never received due to Defendant's representation that it contained a commensurate amount of candy product for a box of its size.

177.    Plaintiff shall suffer irreparable harm if such an order is not granted.

178.    By letters dated September 6, 2016 and September 15, 2016, Defendant was advised of its false and misleading claims pursuant to California Civil Code Section 1782(a).

179.    By letter dated May 29, 2020, Plaintiff advised and put Defendant on notice of Defendant's false and misleading claims pursuant to California Civil Code Section 1782(a).

### FOURTH CAUSE OF ACTION:

### UNJUST ENRICHMENT

### (By Plaintiff against Defendant)

180.    Plaintiff repeats and realleges the allegations set forth above and incorporates the same as if set forth herein at length.

181.    As a result of Defendants' wrongful and deceptive conduct, Plaintiff and the Class have suffered a detriment while Defendant has received a benefit.

182.    In purchasing the Products, Plaintiff and the Class conferred a benefit upon Defendant by paying a premium price for the purchase of each Product. Plaintiff and the Class paid for the Products with the expectation that they would receive packages that were substantially full of candy product, as indicated by the packaging, labeling, advertising, and marketing of the

36

1    Products.

2        183.    Defendant has been unjustly enriched in retaining the revenues derived from

3    Plaintiff's and the Class' purchases, which retention under these circumstances is unjust and

4    inequitable.

5        184.    Defendant has been unjustly enriched and received an economic benefit by the sale

6    of its unlawfully underfilled Products to Plaintiff and the class.

7        185.    Defendant should not be allowed to retain the profits generated and profits realized

8    from the sale of the Products that were unlawfully marketed, packaged, labeled, and promoted.

9        186.    Allowing Defendant to retain these unjust profits is inequitable and would offend

10    traditional notions of justice and fair play and induce companies to misrepresent key

11    characteristics of their products in order to increase sales.

12        187.    Plaintiff and members of the Class have no adequate remedy at law.

13        188.    Because Defendant's retention of the non-gratuitous benefit conferred on it by

14    Plaintiff and the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the

15    Class members for its unjust enrichment.

16                                **FIFTH CAUSE OF ACTION:**

17                                **COMMON LAW FRAUD**

18                            **(By Plaintiff against Defendant)**

19        189.    Plaintiff repeats and realleges all of the allegations contained in the preceding

20    paragraphs and incorporates the same as if set forth herein at length.

21        190.    Plaintiff brings this cause of action individually and on behalf of the members of the

22    Class against Defendant.

23        191.    Defendant has willfully, falsely, and knowingly filled and packaged the Products in a

24    manner indicating that the Products are filled with an amount of candy product commensurate with

25    the size of the container.    However, the Products instead contain a substantial amount of

26    nonfunctional and unlawful slack-fill. Defendant has misrepresented the quantity of candy product

27    contained in the Products.

28    ///

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

FIRST AMENDED COMPLAINT FOR RESTITUTION

192. Defendant's misrepresentations are and were material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making his or her purchase decision), because they relate to the quantity of candy product contained in the Products.

193. Defendant knew of, or showed reckless disregard for, the fact that the Products contained a substantial amount of nonfunctional slack-fill.

194. Defendant intended for Plaintiff and the Class to rely on these representations, as evidenced by Defendant's intentional manufacturing of packaging that is substantially larger than necessary to hold the volume of the contents contained therein.

195. Defendant filled and packaged the Products in a manner indicating that they are adequately filled with candy when in reality, they contain one-third to one-half unlawful empty space.

196. Plaintiff and the Class have reasonably and detrimentally relied on Defendant's misrepresentations when purchasing the Products and, had they known the truth, they would not have purchased the Products or would have paid significantly less for the Products.

197. Therefore, as a direct and proximate result of Defendant's fraud, Plaintiff and members of the Class have suffered injury in fact.

## <u>SIXTH CAUSE OF ACTION:</u>

## <u>BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY</u>

### **(By Plaintiff against Defendant)**

198. Plaintiff repeats and realleges the allegations set forth above and incorporate the same as if set forth herein at length.

199. Plaintiff brings this cause of action individually and on behalf of the members of the Class against Defendant.

200. Defendant, as the designer, manufacturer, marketer, distributor, and seller of the Products, impliedly warranted that the Products contained an adequate amount of candy product for containers of their size.

///

FIRST AMENDED COMPLAINT FOR RESTITUTION

1    201.    Defendant breached the warranty implied in the contract for sale of the Products

2   because it could not pass without objection in the trade under the contract description, the goods

3   were not of fair average quality within the description, and the foods were unfit for their intended

4   and ordinary purpose because the Products' packages do not contain an adequate amount of candy

5   for containers of their size. As a result, Plaintiff and Class members did not receive the goods as

6   impliedly warranted by Defendant to be merchantable.

7    202.    Plaintiff and Class members purchased the Products in reliance upon Defendant's

8   skill and judgment and the implied warranties of fitness for the purpose.

9    203.    The Products were defectively designed and unfit for their intended purpose, and

10  Plaintiff and the Class did not receive the goods as warranted.

11   204.    Plaintiff and the Class sustained damages because they paid for Product they

12  reasonably expected but never received. The Product packaging is therefore not fit for the purpose

13  for which it was intended—to contain an amount of candy proportionate to the size of the Product

14  packaging.

15   205.    Plaintiff and the Class relied on the Product packaging which implies to consumers

16  that the amount of candy therein is proportionate to the size of the box. Defendant breached this

17  expectation by including significant unlawful empty space which consumers cannot consume.

18   206.    As a direct and proximate cause of Defendant's breach of the implied warranty,

19  Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's

20  false representations. Plaintiff purchased the Products in reliance upon the claims by Defendant

21  that the Products were of the quality and quantity represented by Defendant's packaging. Plaintiff

22  would not have purchased the Products, or would have paid significantly less for the Products, if

23  they had known that the Products' claims and advertising as described herein were false.

24  <u>**SEVENTH CAUSE OF ACTION:**</u>

25  <u>**BREACH OF EXPRESS WARRANTY**</u>

26  **(By Plaintiff against Defendant)**

27   207.    Plaintiff repeats and realleges the allegations set forth above and incorporate the

28  same as if set forth herein at length.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

208.   Plaintiff brings this cause of action individually and on behalf of the members of the Class against Defendant.

209.   Plaintiff and each member of the Class formed a contract with Defendant at the time they purchased the Products. The terms of such contract included the promises and affirmations of fact made by Defendant on the Products' packaging, including the amount and quantity of candy product contained therein. This labeling, marketing, and advertising constitute express warranties that became part of the basis of the bargain, and which are part of the standardized contract between Plaintiff and members of the Class and Defendant.

210.   Defendant purports, through its advertising, labeling, marketing, and packaging, to create an express warranty that the Products' packaging contains an expected certain amount of candy product therein.

211.   The size of the Product packaging relates to the amount of candy being purchased and became the basis of the bargain.

212.   Plaintiff and the Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

213.   Defendant breached express warranties about the Products and their quantities, because Defendant's statements and representations about the Products were false and the Products do not conform to Defendant's affirmations and promises, as described herein. Specifically, the Products' boxes contain one-third to one-half empty space for no legitimate reason. Consumers are therefore not receiving what they reasonably expect to receive based on Defendant's representations of the Product packaging. As a result, Plaintiff and members of the Class suffered injury and deserve to be compensated for the financial harm they suffered.

214.   Plaintiff and the members of the Class paid money for the Product. However, Plaintiff and Class members did not obtain the full value of the advertised Product. If Plaintiff and other Class members had known of the true nature of the Product, they would not have purchased the Product, would have purchased less of the Product, or would not have been willing to pay the price premium associated with the Product.

///

FIRST AMENDED COMPLAINT FOR RESTITUTION

215.    Plaintiff and the Class were injured as a direct result of Defendant's breach because (a) they would not have purchased the Products if they had known the true facts; (b) they paid a premium due to the mislabeling of the Products; and (c) the Products did not have the quantity that was promised based on the size of its packaging.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for the following relief:

A.  An order granting Plaintiff and the Class restitution and

B.  Reasonable attorneys' fees and costs.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial on all triable issues.

DATED: March 31, 2021                    **CLARKSON LAW FIRM, P.C.**

/s/ Ryan J. Clarkson
Ryan J. Clarkson, Esq.
Bahar Sodaify, Esq.
Zach Chrzan, Esq.
Christina N. Mirzaie, Esq.

*Attorneys for Plaintiff*

FIRST AMENDED COMPLAINT FOR RESTITUTION

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069